[786 NYS2d 126]

E. WELLINGTON THOMAS STOCKER, Respondent, v STEPHEN PAUL
SHEEHAN, Appellant.

First Department, October 26, 2004

**APPEARANCES OF COUNSEL**

*Law Offices of Robert D. Arenstein*, New York City (*Robert D. Arenstein* of counsel), for appellant.

*Cohen Hennessey & Bienstock, P.C.,* New York City (*Bonnie E. Rabin, Peter Bienstock* and *Gretchen Beall Schumann* of counsel), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

The parties, married in Rhode Island on June 26, 1983, later

moved to that state, where a son, William, was born on August 13, 1990. The parties were divorced on July 1, 1994 in Rhode Island after a contested trial in that state's Family Court, which awarded the parties joint custody of the child with physical custody awarded to the mother, who was given responsibility for all decisions concerning the child's education and religious upbringing. All other decisions concerning the child were to be jointly decided by the parties. The court awarded extensive visitation to the father, an attorney, who was directed to pay child support of $1,500 per month. In pertinent part, the judgment of divorce states: "The State of Rhode Island shall retain jurisdiction and is declared to be the 'home state' as to any decisions concerning custody and visitation in accordance with the provisions of the Rhode Island Uniform Child Custody Jurisdiction Act."

From his birth until the fall of 1994, the child resided in Providence, Rhode Island. After the parties' separation in 1992, William had frequent and extensive contact with his father during the week and on alternate weekends. On November 10, 1994, after a hearing, the Rhode Island Family Court entered an order permitting the mother to relocate to New York on condition that the father have extensive visitation in Rhode Island, including, inter alia, three weekends every month. The order required the mother to deliver William to and pick him up from Providence on two weekends and New Haven, Connecticut on the other weekend and to bear the cost thereof. The order further provided, "The State of Rhode Island shall retain jurisdiction and is declared to be the 'home state' as to any decision concerning custody, visitation and child support, and shall be in accordance with provisions of the Rhode Island Uniform Child Custody Jurisdiction Act, General Laws of Rhode Island, 1956, as amended 15-14-1 through 26." The parties substantially adhered to these provisions from November 1994 to the present.

The mother commenced this proceeding on September 12, 2003 in Supreme Court, New York County for an order "a) modifying the extraordinary visitation schedule entered almost nine years ago; and b) modifying and enforcing the child support provisions established pursuant to the parties' divorce over nine years ago." In her petition, the mother asserted that the nine-year-old visitation schedule was becoming "more socially, developmentally and educationally onerous" for the child, who wanted to spend more time with his friends. According to the mother, the child would return home exhausted from these

weekend trips, which also interfered with his working on school projects with his classmates and prevented him from participating in practice sessions for high school entrance examinations. The mother also attacked the original child support order as vague, outdated and in contravention of public policy and in violation of child support standards. The petition does not disclose the income of the mother, also an attorney, and does not set forth specific facts showing a change of circumstances.

The father cross-moved to dismiss the petition under CPLR 3211 (a) and (c) and for summary judgment under CPLR 3212 on the ground that Supreme Court did not have subject matter jurisdiction, asserting that the Family Court of Rhode Island had exclusive, continuing jurisdiction over this matter and that a New York court was barred from modifying the order of the Rhode Island court under the provisions of Domestic Relations Law § 76 (1) (b), Family Court Act § 580-205 (d), 28 USC §§ 1738A and 1738B. Supreme Court granted the motion in its entirety and denied the cross motion, finding that Rhode Island no longer had jurisdiction to determine the custody/visitation issue since New York was the child's home state for at least six consecutive months before the commencement of this proceeding. Supreme Court determined, without referring to any specific Rhode Island statute or Rhode Island decisional authority, that the recently enacted Rhode Island Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) prohibits Rhode Island from entertaining a petition to modify its pre-UCCJEA determination because Rhode Island is no longer the child's home state. The court also set the matter down for a hearing on the requested modification of the Rhode Island order of visitation. We reverse.

The question of jurisdiction to resolve the issues raised by this proceeding is governed by the provisions of UCCJEA, an updated and enhanced version of the Uniform Child Custody Jurisdiction Act (UCCJA), which represents an attempt by the National Conference of Commissioners on Uniform State Laws to promote uniformity concerning child custody and visitation as to children who move from one state to another and to bring those laws into conformity with federal law, including the Parental Kidnaping Prevention Act (PKPA). On July 17, 2003, Rhode Island adopted UCCJEA, which repealed and superseded UCCJA (see RI Gen Laws §§ 15-14.1-1—15-14.1-42). Similarly, in April 2002, New York had earlier enacted UCCJEA, with minor modifications, as Domestic Relations Law article 5-A,

which repealed UCCJA (*see* former Domestic Relations Law §§ 75-a—75-z).

Rhode Island's UCCJEA, but not New York's, contains a specific transitional provision, General Laws § 15-14.1-42, that requires enforcement of the law in effect at the time "the motion or other request [for relief] was made." As the comment to the transitional provision of the UCCJEA notes, "The provisions of this act apply if a motion to modify an existing determination is filed after the enactment of this Act" (Uniform Child-Custody Jurisdiction and Enforcement Act [with Prefatory Note and Comments by Robert G. Spector], 32 Fam LQ 301, 384 [summer 1998]). Rhode Island's UCCJEA, like New York's, introduces the concept of "exclusive, continuing jurisdiction," but limits the concept to only child custody determinations "consistent with this chapter," i.e., chapter 14.1 of title 15 of the Rhode Island General Laws.

Rhode Island General Laws § 15-14.1-14, provides, in pertinent part:

> "Exclusive, Continuing Jurisdiction.
>
> "(a) Except as otherwise provided, a court of this state which has made a child custody determination consistent with this chapter has exclusive, continuing jurisdiction over the determination until:
>
> "(1) A court of this state determines that neither the child, the child's parents, [or] any person acting as a parent . . . [has] a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> "(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.
>
> "(b) A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination pursuant to this chapter." (*See also* Domestic Relations Law § 76-a [1].)

Thus, under Rhode Island law, a New York court may divest

Rhode Island of exclusive, continuing jurisdiction in this matter only if the New York court determines that the child and the child's parents do not presently reside in Rhode Island. Since the father remains a Rhode Island resident, no such determination can be made.

New York lacks subject matter jurisdiction to determine the subject custody/visitation issue despite the fact that the child is now and has been for the past nine years a resident of New York. New York's Domestic Relations Law § 76-b, which is part of the New York version of UCCJEA, states as follows:

"Except as otherwise provided in section seventy-six-c of this title,[1] a court of this state may not modify a child custody determination[2] made by a court of another state unless a court of this state has jurisdiction to make an initial determination under paragraph (a) or (b) of subdivision one of section seventy-six of this title and:

"1. The court of the other state determines it no longer has exclusive, continuing jurisdiction under section seventy-six-a of this title or that a court of this state would be a more convenient forum under section seventy-six-f of this title; or

"2. A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state."

Given the father's residency in Rhode Island, the prerequisites for jurisdiction to hear this matter in New York could not be clearer: Rhode Island must first decline jurisdiction since a court of this state may not modify a child custody determination made by a court of another state "unless . . . [t]he court of the other state determines it no longer has exclusive, continuing jurisdiction . . . or that a court of this state would be a more convenient forum" (Domestic Relations Law § 76-b [1]). "Where a different state possesses exclusive, continuing jurisdiction New York cannot take jurisdiction unless the foreign state declines, even though the parties clearly no longer have a significant connection with that state" (Sobie, Practice Com-

---

1. Domestic Relations Law 76-c, relating to "Temporary emergency jurisdiction," has no application here.

2. "Child custody determination" includes visitation rights (Domestic Relations Law 75-a [3]; *see Matter of Reis v Zimmer*, 263 AD2d 136 [1999]).

mentaries, McKinney's Cons Laws of NY, Book 14, 2004 Pocket Part, Domestic Relations Law § 76-b, at 115). "There is no recourse when a recalcitrant state refuses to yield" (*id.*). "The modification state is not authorized to determine that the original decree state has lost its jurisdiction." (Spector, 32 Fam LQ, at 345.)

It is equally clear that it is for the Rhode Island court, not a New York court, to decide the issue of whether Rhode Island has "exclusive, continuing jurisdiction" since it is a condition to New York's exercise of jurisdiction to modify a child custody determination made by a court of another state that "[t]he court of the other state determines it no longer has exclusive, continuing jurisdiction" (Domestic Relations Law § 76-b [1]).

Furthermore, Rhode Island's UCCJEA makes continuing jurisdiction of custody decrees exclusive until a Rhode Island court determines that neither the child, the parents nor any person acting as a parent has a significant connection with Rhode Island and that substantial evidence is no longer available in Rhode Island concerning the child's care, protection, training, and personal relationships (RI Gen Laws § 15-14.1-14 [a] [1]). The use of the phrase "[a] court of this state" in section 15-14.1-14 (a) (1) makes it clear that Rhode Island is the sole determinant of whether jurisdiction continues and a party seeking to modify a custody determination must obtain an order therefrom declaring jurisdiction.

Even in the absence of the provision in the Rhode Island custody order expressly retaining jurisdiction as to any subsequent decisions concerning custody, visitation and child support, "[t]he majority of courts that have considered the issue of continuing jurisdiction . . . have held that 'the state in which the initial decree was entered has exclusive continuing jurisdiction to modify the initial decree if: (1) one of the parents continues to reside in the decree state; and (2) the child continues to have some connection with the decree state, such as visitation' " (*Butler v Grant*, 714 A2d 747, 752 [Del Sup Ct 1998] [citations omitted]).

Against this statutory framework, the mother's entire jurisdictional argument is premised on the claim that since the initial 1994 determination of the Rhode Island Family Court could not have been made "consistent with this chapter," as provided in its UCCJEA, because that determination was made before "this chapter" ever existed, Rhode Island courts would not have "exclusive, continuing jurisdiction." Therefore, she

argues, New York, the child's current home state, is the proper forum for this modification petition.

The mother's argument that the initial child custody determination of the Rhode Island court under the UCCJA could not have been "consistent with" UCCJEA rings hollow since UCCJEA's jurisdiction on a child custody determination "generally continues the provisions of the UCCJA § 3" (Spector, 32 Fam LQ, at 334). At the time of the initial child custody determination in 1994, Rhode Island was the child's "home state," as defined under both UCCJA and UCCJEA. Not only was that determination "consistent with" UCCJEA's requirements, but it also reflected the same determination to exercise jurisdiction as would be required under UCCJEA. Thus, under the facts presented, absent a Rhode Island court's declination of jurisdiction under Rhode Island General Laws § 15-14.1-14 (a) (1), Rhode Island has "exclusive, continuing jurisdiction."

The mother's claim that "consistent with" UCCJEA means "pursuant to" UCCJEA is contrary both to the accepted meaning of these phrases and to the purpose of UCCJEA to avoid forum shopping when the original custody decree is consistent with UCCJEA. In that regard, the mother cites and Supreme Court relied upon a Connecticut court's review of its own jurisdiction in *Graham v Graham* (2002 WL 241493, 2002 Conn Super LEXIS 288 [Super Ct, Feb. 6, 2002]). In *Graham*, the plaintiff commenced proceedings in Connecticut to modify a Connecticut custody determination entered a year and a half before Connecticut's enactment of UCCJEA. Stating that "[u]nder the UCCJEA, jurisdiction largely depends on the status of the involved individuals on the date of the commencement of the proceeding" (2002 WL 241493, *2, 2002 Conn Super LEXIS 288, *5), the *Graham* court held that under UCCJEA its exclusive, continuing jurisdiction existed only if UCCJEA was in effect when the custody determination was made. Since that determination was made before UCCJEA came into effect in Connecticut, *Graham* held, Connecticut did not have exclusive continuing jurisdiction (2002 WL 241493, *3, 2002 Conn Super LEXIS 288, *7).

The *Graham* case offers no support for the proposition that a New York court can decide whether a Rhode Island court has exclusive continuing jurisdiction. While *Graham* held that Connecticut would have exclusive, continuing jurisdiction to modify its prior child custody decree only if Connecticut's version of UCCJEA was in effect when the original custody determination

was made, the decision turned on a provision in the Connecticut UCCJEA—the prepositional phrase "pursuant to"[3] —that is not contained in the Rhode Island statute. The Rhode Island statute and the UCCJEA itself use the prepositional phrase "consistent with."

The term "pursuant to" in the Connecticut statute limiting exclusive, continuing jurisdiction to determinations made "pursuant to" another referenced statute is a "restrictive term" (*see Knowles v Holly*, 82 Wash 2d 694, 702, 513 P2d 18, 23 [1973]), meaning that the referenced statute must be the "legal mechanism" under which the determination was made (*see John Allan Love Charitable Found. v United States*, 540 F Supp 238, 244 [ED Mo 1982 ], *affd* 710 F2d 1316 [1983]).

On the other hand, "consistent with" means only that the prior custody determination must have been "in harmony with" or "in general agreement" with the UCCJEA (*Chippenham & Johnston-Willis Hosps., Inc. v Peterson*, 36 Va App 469, 476, 553 SE2d 133, 137 [2001]; *see City of El Paso v Simmons*, 379 US 497, 509 [1965]; *see also Roanoke Mem. Hosps. v Kenley*, 3 Va App 599, 606, 352 SE2d 525, 529 [1987] ["consistent with" does not mean "exactly alike" or "the same in every detail" but, instead, means "in harmony with," "compatible with," "holding to the same principles," or "in general agreement with"]; *City of St. Louis v De Lassus*, 205 Mo 578, 585, 104 SW 12, 14 [1907] ["(c)onsistent with" does not "import exact conformity" but, rather, "substantial harmony"]).

Moreover, the proposition that a custody determination made under UCCJA is not "consistent with" UCCJEA leads to an absurd result. Since UCCJEA is merely a "revised" version of UCCJA (Spector, 32 Fam LQ, at 307 n 8), the drafters could not have intended that courts deciding cases under the former statute would, under the latter, lose "exclusive, continuing jurisdiction" of all such cases.

Significantly, the mother is unable to offer any explanation as why UCCJEA would refuse to confer "exclusive, continuing jurisdiction" because the court's original exercise of jurisdiction to make the child custody determination was under UCCJA, when the same exercise of jurisdiction would have occurred if UCCJEA had been in effect. After all, under both UCCJA and UCCJEA, Rhode Island was the child's "home state."

---

**3.** The Connecticut UCCJEA granted exclusive, continuing jurisdiction only to "custody determination[s] pursuant to [Conn Gen Stat] sections 46b-115k to 46b-115m, inclusive" (Conn Gen Stat § 46b-115*l* [a]).

Moreover, because, under Rhode Island law, Rhode Island has exclusive, continuing jurisdiction, Supreme Court's assertion of jurisdiction violated PKPA, which preempts state law (*Matter of Jackson-Ordia v Ordia*, 224 AD2d 529 [1996]). Under 28 USC § 1738A (h) "A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination" (*see Matter of Jackson-Ordia v Ordia, supra* [PKPA, which granted Massachusetts court jurisdiction to modify its prior custody decree, preempted New York law which would have given New York court jurisdiction to modify the decree]). UCCJEA's continuing jurisdiction provisions are narrower than the comparable provisions of PKPA, which authorizes continuing jurisdiction as long as the original decree state remains the residence of any "contestant" and that state continues to retain jurisdiction under its own law (28 USC § 1738A [d]). It also noted that under the PKPA a court of a state may not modify a custody determination made by another state unless, inter alia, the court of the other state no longer has or has declined to exercise jurisdiction (28 USC § 1738A [f]). New York courts have consistently rejected the mother's argument that PKPA applies only to kidnapping. PKPA contains no such condition to its application (*Matter of Diane W. v Norman W.*, 112 Misc 2d 114, 115 [1982]; *see Matter of Patricia R. v Andrew W.*, 121 Misc 2d 103, 105 [1983]).

Finally, Supreme Court also erred in exercising jurisdiction over the 1994 Rhode Island judgment of divorce as it relates to child support, which, in light of the State's adoption of the Uniform Interstate Family Support Act (UIFSA) (*see* Family Ct Act § 580-205 [d]), is prohibited by the exclusive, continuing jurisdiction of the Rhode Island court. UIFSA requires recognition of Rhode Island's exclusive, continuing jurisdiction with respect to child support under the 1994 judgment, given the father's continuing residence there and the absence of the consent of the parties to a change (*see Appel-Meller v Meller*, 285 AD2d 430, 431 [2001]; *see also* Sobie, Practice Commentaries, McKinney's Cons Law of NY, Book 29A, Family Ct Act § 580-205, at 224-225; 28 USC § 1738B [d], [e]).

We have considered the mother's other arguments and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (John E. H. Stackhouse, J.), entered November 28, 2003,

which granted petitioner mother's application to modify a 1994 Rhode Island custody and visitation order as well as part of a 1994 judgment of divorce pertaining to child support and denied respondent father's cross motion to dismiss the petition for lack of subject matter jurisdiction and for summary judgment, should be reversed, on the law, without costs or disbursements, the petition denied and the cross motion to dismiss the petition pursuant to CPLR 3211 (a) (2) granted.

BUCKLEY, P.J., TOM, SAXE and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered November 28, 2003, reversed, on the law, without costs or disbursements, the petition denied and the cross motion to dismiss the petition pursuant to CPLR 3211 (a) (2) granted.