[No. B182354. Second Dist., Div. Four. Sept. 23, 2005.]

ROBERT D. GRAHM, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LISA BETH ZOHAR, Real Party in Interest.

Counsel

Reuben, Raucher & Blum, Timothy D. Reuben, Stephanie I. Blum and Daniel A. Windler for Petitioner.

No appearance for Respondent.

Freid and Goldsman, Gary J. Cohen and Monica Mazzei for Real Party in Interest.

Opinion

**HASTINGS, J.—**

## BACKGROUND

Petitioner, father in a child custody matter, seeks a writ of mandate requiring the family court to vacate an order entered on March 29, 2005, in which it determined that it no longer had exclusive jurisdiction to modify its original child custody/visitation order.[1] The original custody order was entered in October 2003, after the parties stipulated to a judgment of dissolution of their marriage. The family court awarded the parties joint custody of their twin girls, born in California on October 2001, but physical custody was awarded to respondent. One month before entry of the judgment, mother had moved with the twins to New York, with the consent of father.

Four months later, mother applied for an order in the New York court to modify custody. The New York court dismissed her motion on the ground that it lacked jurisdiction. The mother appealed the dismissal, and the New York appellate court affirmed.

In the meantime, petitioner continued to seek relief on visitation issues in California, including makeup visitation time and a request to take the children on a cruise. Petitioner subsequently filed a motion to modify visitation orders and one month later, a motion to modify custody, requesting sole legal custody and primary physical custody of his two daughters.

Father's consolidated motions were heard on March 1, 2005. The court declined to exercise jurisdiction, relying upon Family Code section 3422.[2]

---

[1] Father was the petitioner in the family court and mother was the respondent. To avoid confusion, we shall refer to father as petitioner or Father, and respondent as Mother.

[2] All further statutory references will be to the Family Code, unless otherwise specified.

We issued an alternative writ ordering the family court to hear and determine father's motions on the merits, or in the alternative to show cause why a peremptory writ of mandate should not issue ordering the court to do so.

## DISCUSSION

██ Father contends that the family court erred in its interpretation of section 3422. In relevant part, section 3422 provides that a California court has "exclusive, continuing jurisdiction" over the child custody determination *until* both of the following conditions are met: "[a] court of this state determines that neither the child, nor the child and one parent . . . have a significant connection with this state *and* that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships." (§ 3422, subd. (a)(1), italics added.)[3] Thus, only when there is both a lack of significant connection and lack of substantial evidence in this state, may California terminate exclusive jurisdiction. We conclude the trial court erred in its interpretation of the statute.

During oral argument, the trial court stated to counsel for petitioner: "[W]hatever I think of your request for changing custody, I think you need to address it to a New York court which could then make an appropriate decision based on the evidence there *because that's where I think the evidence is.* So, I'm going to decline to exercise my jurisdiction any further in this matter and defer to the court of New York for further modification to my order if a court in New York wants to do that." (Italics added.) A few moments later, the court stated: "The court has jurisdiction. I have jurisdiction until something occurs. And what occurs is my making a determination that neither—and I just love the way this is phrased. Neither the child nor the child and one parent nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationship. *I am making that determination today.*" (Italics added.) In its written order, the family court stated: "*Respondent* and the parties' two minor children . . . have continuously resided in the State of New York since September 2003, and no longer have a significant connection with the State of California." (Italics added.)

It is apparent from the order that the family court focused on respondent and the twins when it concluded that no further "significant connection" remained within California.

---

[3] Not relevant here, section 3422, subdivision (a)(2) provides that California's exclusive continuing jurisdiction would also cease if the child and both of the parents no longer resided in California.

Father argues the court erred when it concluded the out-of-state residency of the children and respondent terminated a significant connection with California. He relies upon *Kumar v. Superior Court* (1982) 32 Cal.3d 689, 700 [186 Cal.Rptr. 772, 652 P.2d 1003] (*Kumar*), which held that a "significant connection" to the original state continues to exist as a matter of law as long as a parent who is exercising visitation rights still lives in that state.

Mother contends that *Kumar* is no longer controlling, because the decision was based on the old Uniform Child Custody Jurisdiction Act (old uniform act), which was replaced by the Uniform Child Custody Jurisdiction and Enforcement Act (new uniform act), effective January 1, 2000.

■ We review issues of statutory construction de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) The parties disagree with regard to the meaning of "significant connection." ■ A judicial interpretation of the same or substantially similar language in a predecessor statute is a useful tool of statutory construction, unless a contrary intent is manifested by the Legislature in enacting the new statute. (*State of South Dakota v. Brown* (1978) 20 Cal.3d 765, 774 [144 Cal.Rptr. 758, 576 P.2d 473].) Modification jurisdiction in the old uniform act was codified in former Civil Code section 5152, subdivision (1)(b), and conferred jurisdiction to modify when "[i]t is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." (Stats. 1973, ch. 693, § 1, p. 1253.)

■ The current statute, codified from the new uniform act, has almost identical language, but is phrased in the negative. Exclusive jurisdiction is terminated when: "neither the child, nor the child and one parent . . . have a significant connection with this state and that substantial evidence in no longer available in this state . . . ." (§ 3422, subd. (a)(1).) The term "significant connection" was defined in *Kumar* prior to the enactment of the current statute. " '[W]hen the Legislature amends a statute without changing those portions . . . that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the previous judicial construction.' [Citations.]" (*People v. Atkins* (2001) 25 Cal.4th 76, 89–90 [104 Cal.Rptr.2d 738, 18 P.3d 660].)

We assume that the drafters had the former language in mind when they enacted the subsequent provisions. (*Yoffie v. Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 748 [238 Cal.Rptr. 502].) The identical term, "significant

connection" was repeatedly used throughout numerous statute revisions and amendments. (Stats. 1973, ch. 693, § 1, p. 1253; Stats. 1992, ch. 162, § 10, p. 464; Stats. 1993, ch. 219, § 117, p. 1633; Stats. 1999, ch. 867, § 3.) Our Supreme Court cited *People v. Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], declaring " ' "repeated *reenactment* of a statute" ' following judicial interpretation of that statute suggests legislative adoption of that interpretation." (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257 [121 Cal.Rptr.2d 187, 47 P.3d 1056].) " 'The language of the statute as revised, or the legislative intent to change the former statute, must be clear before it can be pronounced that there is a change of such statute in construction and operation. [Citations.]' " (*Childs v. Gross* (1940) 41 Cal.App.2d 680, 688 [107 P.2d 424].) We conclude that the judicial interpretation attributed by *Kumar* to "significant connection" in former Civil Code section 5152 should be applied to that term in section 3422.

Additional support for the application of the *Kumar* definition to "significant connection" in the current statute is established by the similarity between the goals of both the old and new act regarding modification jurisdiction. Father contends that the goal of the old uniform act, to retain modification jurisdiction in the decreeing state until all of the connection between the parent and the child is lost, is echoed in the goals of the new act.

That goal in the old act was expressed by Professor Bodenheimer:[4] " '[T]he continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction. . . . Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside.' " (*Kumar, supra,* 32 Cal.3d at p. 696.)

Professor Robert G. Spector, the reporter for the committee which drafted the new uniform act, explained the intended application of section 3422: "So long as one parent, or person acting as a parent, remains in the state that made the original custody determination, only that state can determine *when the relationship between the child and the left-behind parent has deteriorated sufficiently so that jurisdiction is lost.*" (Spector, *Uniform Child-Custody Jurisdiction and Enforcement Act (with Prefatory Note and Comments)* (1998) 32 Family L.Q. 301, 340, fn. 81, italics added.) The *Kumar* interpretation advances this objective. If the remaining parent continues to assert and

---

[4] Professor Bodenheimer was the reporter for the special committee that drafted the old uniform act.

exercise his visitation rights, then the parent-child relationship has not deteriorated sufficiently to terminate jurisdiction.

The negative phrasing of section 3422 reinforces California's intent to retain exclusive jurisdiction. California courts must retain continuing jurisdiction *unless both* conditions are met that cause that jurisdiction to be terminated: neither the child, nor the child and the parent have a significant connection with the state and substantial evidence is no longer available in this state. (§ 3422, subd. (a)(1).)

Mother contends that applying the *Kumar* construction of "significant connection" would make the second part of section 3422, subdivision (a)(1) surplusage, because she reasons, so long as one parent still lives in the original state, without more, there would always be a significant connection. Mother's argument presupposes that either: (1) *Kumar's* requirement that the parent continue "to assert and exercise his custody/visitation rights" is satisfied by just partial or sporadic compliance, or (2) continued exercise of visitation rights is not a factor distinct from residency, in effect, duplicating the "substantial evidence" requirement. (*Kumar, supra*, 32 Cal.3d at p. 700; see § 3422, subd. (a)(1).)

Without any California authority interpreting "significant connection" since the new uniform act took effect, mother relies on *Medill and Medill* (2002) 179 Or.App. 630, 640–641 [40 P.3d 1087]. The Oregon court compared maximum versus minimum contacts to determine significant connection. Although the wife had consented to an Oregon divorce, the *Medill* children had always lived in Germany, and had only spent one five-week period in Oregon in 1998. (*Id.* at p. 640.) The court found that Germany was the place of maximum contacts and Oregon lacked a significant connection. (*Id.* at p. 641.)

Even if we were to apply *Medill* to our facts, the court could find that California has sufficient contacts for a significant connection. The twins were born in California and resided in California for half of their current life. Father was granted specific periods of custody in California during the summer and alternating holidays, as well as at least four visits each year in New York. Relatives of the twins in California were granted reasonable visitations. The *Kumar* application to significant connection ensures that the state continues to have sufficient contacts.

Petitioner provides persuasive authority to continue the *Kumar* definition of significant connection in the new act when determining modification jurisdiction. "[The new act's] jurisdiction on a child custody determination 'generally continues the provisions of the [old act] § 3.' " (*Stocker v. Sheehan* (2004) 13

A.D.3d 1, 8 [786 N.Y.S.2d 126].) Deciding modification jurisdiction under the new act, the New York court noted that it followed the majority of states in finding " ' "the state in which the initial decree was entered has exclusive continuing jurisdiction to modify the initial decree if: (1) [a parent still] reside[s] in the decree state; and (2) the child continues to have some connection with the decree state, such as visitation" ' [citations]." (*Id.* at p. 7.)

Furthermore, by not applying *Kumar,* if a "significant connection" is terminated once the child or the child and a parent leave the state, there would be surplusage in subdivision (a)(2) which terminates jurisdiction when the child and both parents do not presently reside in the state. (§ 3422, subd. (a)(2).) Significance should be given to every part of an act, if possible, and construction making words surplusage should be avoided. (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) If jurisdiction is terminated upon a showing that only one parent leaves the state with the child, it would be redundant to have subdivision (a)(2) terminating jurisdiction when both parents leave the state. " 'The provisions of a statute should be construed in context and harmonized whenever possible, and rendering some words surplusage is to be avoided.' [Citations.]" (*California Highway Patrol v. Workers' Comp. Appeals Bd.* (1986) 178 Cal.App.3d 1016, 1023 [224 Cal.Rptr. 94].) To avoid surplusage, significant connection must refer to something in addition to the residency status of the child.

 We find that the California Legislature meant to preserve *Kumar*'s construction of "significant connection" in section 3422, subdivision (a)(1), and we conclude that the original state retains continuing exclusive jurisdiction as long as the parent who is exercising visitation rights still lives in that state and the relationship between that parent and the child has not deteriorated to the point at which the exercise of jurisdiction would be unreasonable.

By focusing on the wrong parent, the family court failed to properly assess the first factor addressed in section 3422. The matter must be remanded for the family court to reassess the matter.

We also need to address the second factor, which states: "that substantial evidence is no longer available *in this state* concerning the child's care, protection, training, and personal relationships." In its original statement to counsel, the family court stated: "I think you need to address it to a New York court which could then make an appropriate decision based on the evidence there because that's where I think the evidence is." Later, the court quoted the language from section 3422 and stated: "I am making that determination today." To us, the court's finding on the second factor is

ambiguous. It is not clear that the court actually made a finding there is no longer substantial evidence in this state, or if it did, what evidence the finding was based upon.

## DISPOSITION

The petition is granted. A writ shall issue directing the family court to vacate its order of March 29, 2005, and further entertain petitioner's motions consistent with the principles discussed in this opinion. Petitioner shall have his costs on appeal.

Epstein, P. J., and Willhite, J., concurred.

On September 28, 2005, the opinion was modified to read as printed above.