# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**June 2, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**SAMANTHA L.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-333**     (Fam. Ct. Monongalia Cnty. Case No. FC-31-2016-D-221)

**SHAWN L.,**
**Petitioner Below, Respondent**


## MEMORANDUM DECISION

Petitioner Samantha L.[1] ("Mother") appeals the Family Court of Monongalia County's July 21, 2025, Order Denying Contempt, Converting Action and Scheduling Further Proceedings. Respondent Shawn L. ("Father") filed a response in support of the family court's order.[2] Mother did not file a reply. The main issue on appeal concerns the family court's exclusive, continuing jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").[3]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision. For the reasons set forth below, a memorandum decision vacating and remanding with instructions is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The parties are the biological parents of one child, who was born in March 2015. They were married in Beaufort County, South Carolina, separated on July 6, 2015, and divorced by a final divorce order entered by the Family Court of Monongalia County on September 19, 2016. The final divorce order found that the parties "reached an agreed Permanent Parenting Plan dated September 14, 2016." The order also found that Mother voluntarily waived Father's monthly $292.24 child support obligation and instead agreed

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is represented by Brianna W. McCardle, Esq. Father is represented by Teresa M. Samuels, Esq.

[3] The UCCJEA is codified at West Virginia Code §§ 48-20-101 to -404 (2001).

to Father paying $75 per month. The family court ratified and confirmed the parenting plan, finding that it was in the best interests of the child.

This September 14, 2016, parenting plan provided Mother with primary custody of the child and noted that Mother was relocating to South Carolina.[4] Father's parenting time was scheduled for the first Saturday of the month through the last Saturday of the month for the months of April, June, and August. The parties agreed to meet and exchange the child at the most convenient location halfway between Father's West Virginia residence and Mother's South Carolina residence. Following the finalization of the divorce, Mother relocated to Beaufort, South Carolina, and has resided there with the minor child since.

On June 9, 2017, Father filed a Petition for Contempt alleging that Mother was not abiding by the parties' September 14, 2016, parenting plan. After Father filed his petition, the parties were in communication through text messages between July 12, 2017, and July 17, 2017, wherein Father seemingly indicated his intention to dismiss his June 9, 2017, contempt filing, texting that he "ha[d] to file a motion to drop the contempt stuff" and that he had "to go into the court and talk to them." The family court held a hearing on Father's contempt petition on July 18, 2017; however, Mother asserted that she did not appear for the hearing based upon Father's texts about dismissing the petition. On October 5, 2017, the family court found Mother in contempt for failing to follow the parenting plan and awarded Father two additional weeks of parenting time to make up for his lost parenting time.

On August 16, 2017, Father filed a second Petition for Contempt, alleging again that Mother was failing to adhere to the parties' parenting plan. The second Petition for Contempt was scheduled for hearing on October 2, 2017; however, it was dismissed by order entered on October 12, 2017, because neither party appeared.

In November 2017, Father sent a letter to Mother wherein he stated his intention to "give up [his] rights to [the child] . . ." under certain conditions. Father's conditions were expressly that,

> 1. September of 2017 was the last time I pay [for] child support. 2. [Mother] help[s] pays back the auto loan she helped take out from Credit Acceptance. 3. Any contact will be considered harassment and will be dealt with as such. Contact from significant others, significant others family, any family

---

[4] Mother also filed her notice of relocation to South Carolina with the family court on September 14, 2016, prior to the final divorce hearing, stating her intention to relocate with the child to Beaufort, South Carolina, on or after October 6, 2016. Mother reasoned that her relocation was to be close to her parents and sibling so they could help with the child's caretaking.

member, and friends of the family will count and be dealt with accordingly. Not necessarily legally unless harassment is continuous.

In early 2025, Mother and her current husband initiated a stepparent adoption proceeding related to the child in South Carolina. Pursuant to that proceeding, Father received notice of the adoption, appeared at the hearing, and objected to the same. Following a conference between the South Carolina and West Virginia courts, South Carolina apparently declined to assume jurisdiction in the adoption proceeding due to the family court's exclusive, continuing jurisdiction.[5]

Thereafter, Father filed a Petition for Contempt in family court on April 25, 2025, alleging that Mother had failed to obey the parties' September 14, 2016, parenting plan, had relocated to South Carolina without the court's permission, had threatened and harassed him, and was now attempting to secure a stepparent adoption in South Carolina with her husband. Also, in late April 2025, Father sent his first monthly child support payment since September 2017 to Mother. It is uncontroverted that Father last had visitation with the child in South Carolina in early June of 2017, and that the family court case remained inactive from October 12, 2017, through April 21, 2025, as nothing was filed by any party, attorney, or the court during that time.

On July 9, 2025, Mother filed her response to Father's Petition for Contempt, denying his allegations, and asserting that the family court permitted her relocation to South Carolina in 2016. Mother maintained that Father had previously indicated his intention to relinquish his parental rights, and that he had abandoned the child by failing to have any contact with the child or provide her with any financial support for eight years. Mother's response also cited concerns with respect to Father's status as a convicted sex offender for possession and distribution of child pornography involving female children ages six to twelve years old, and the fact that Father had voluntarily relinquished his rights to a different child in a separate abuse and neglect matter. Although Father's conviction existed at the time of the parties' original 2016 parenting plan, Mother expressed concerns given Father's complete and total lack of involvement with the minor child for over eight years, the ages of Father's victims (six- to twelve-year-old females), and the child's current age (ten-year-old female). Mother also asserted that West Virginia should relinquish jurisdiction, as South Carolina was a more appropriate forum.

On July 21, 2025, the family court held a hearing on Father's Petition for Contempt. During the hearing, Father admitted that he had not had any contact with the minor child

---

[5] The parties did not provide any pleadings, orders, or other documents from the South Carolina stepparent adoption proceeding to this Court on appeal, but the record supplied suggests that the South Carolina court called the family court during a March 2025 adoption hearing when Father appeared and objected to the stepparent adoption.

since June 2017, had not provided her with any financial support, and had not attempted to initiate any court proceedings seeking enforcement or modification of the parties' original parenting plan after sending Mother the November 2017 letter attempting to relinquish his parental rights. Father testified that Mother coerced him into writing the letter but admitted to developing the provisions contained in the letter both on his own and jointly with Mother. Father claimed he did not pursue any action with respect to the minor child previously because he believed his parental rights were terminated due to his November 2017 letter; however, Father admitted to having voluntarily relinquished his parental rights to a different child previously, demonstrating his familiarity with the termination process. Father further admitted to being convicted of possession and attempted distribution of sexually explicit material involving minor females aged six to twelve and being a registered sex offender.

On July 21, 2025, at the conclusion of the hearing on Father's Petition for Contempt, the family court issued its Order Denying Contempt, Converting the Action, and Scheduling Further Proceedings. The court ultimately declined to find Mother in contempt on the basis of "unclean hands" and declined to enforce the parties' original parenting plan, finding instead that a "significant change of circumstances has occurred since the last order in that there has been no contact between the child and [Father] since 2017." The court then converted Father's contempt matter into a custodial allocation proceeding and ordered that the parties should "either agree that the [Father] will formally relinquish his parental rights to allow the child to be adopted OR seek an agreed prospective parenting plan which includes a transitional phase taking into account the lengthy period during which there has been no contact between [Father] and child[.]" The court referred the parties to mediation and ordered Father to have immediate "telephone/FaceTime/electronic communications access to the child" three days per week.

After the family court declined to find Mother in contempt and converted the matter into a custodial allocation proceeding, Mother orally moved the court to find West Virginia an inconvenient forum. In denying her motion to find that West Virginia was an inconvenient forum, the court found and concluded that, "[a]lthough West Virginia is not currently the child's home state, due to the prior order, and the father's continued residency in West Virginia, this [c]ourt has retained jurisdiction over custody" and "that it does have appropriate retained jurisdiction, notwithstanding the child's residency in South Carolina since 2017, and the South Carolina Court agreed when it declined to exercise jurisdiction in March 2025." It is from this July 21, 2025, Order Denying Contempt, Converting Action and Scheduling Further Proceedings that Mother now appeals.

When reviewing the order of a family court, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review

4

the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

The critical matter before this Court is whether the family court properly retained exclusive, continuing jurisdiction under the UCCJEA. The applicability of a statute, such as the UCCJEA, is a question of law. *See In re R.D.*, 252 W. Va. 368, __, 922 S.E.2d 567, 575 (2025). "Where the issue on an appeal from the [lower] court is clearly a question of law . . . we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). "The term 'de novo' means 'anew.' In other words, we review the [lower] court's ruling in the same way that the [lower] court made the ruling, as though the ruling were never made." *Kapitus Servicing, Inc. v. Timberline Four Seasons Utilities, Inc.*, 249 W. Va. 70, 75, 894 S.E.2d 547, 552 (Ct. App. 2023) (citations modified). With those standards in mind, we turn to the arguments on appeal.

Mother argues three assignments of error on appeal. However, as one of her assignments of error concerns the dispositive issue in this matter, we need only address the family court's exclusive, continuing jurisdiction in accordance with West Virginia Code § 48-20-202 (2001) of the UCCJEA.[6] Mother argues that the family court erred by retaining jurisdiction over the matter as West Virginia no longer has a significant connection with the child or Mother, and there is no substantial evidence present in West Virginia concerning the child's care. In support of her argument, Mother maintains that Father has neither contacted the child nor provided any type of financial support for the child in eight years, and that the child has continued to reside in South Carolina with Mother since the parties' 2016 divorce. Mother maintains that given the uncontested facts of the case, the family court should have relinquished its exclusive, continuing jurisdiction. We agree.

We commence our de novo review of the family courts' authority to determine the child's custody by recognizing that the UCCJEA "is a model law adopted in West Virginia that governs subject matter jurisdictional issues for all child custody

---

[6] Mother's first assignment of error is that the family court erred by *sua sponte* converting Father's contempt proceeding into a modification of custodial allocation proceeding. Her second assignment of error is that the family court erred by awarding Father parenting time by disregarding Father's felony conviction for the possession and attempted distribution of sexually explicit material involving female children between the ages of six and twelve and Father's abandonment, as he had complete lack of contact with the child for over eight years.

5

proceedings," including *initial* custody determinations and *modifications*. *In re Z.H.*, 245 W. Va. 456, 463, 859 S.E.2d 399, 406 (2021). The UCCJEA is a uniform act that has been adopted by every state except Massachusetts. *See Phillip G. v. Korbin-Steiner in & for Cnty. of Maricopa*, 256 Ariz. 573, 577, 542 P.3d 664, 668 (Ct. App. 2023).[7] The Supreme Court of Appeals of West Virginia ("SCAWV") has stated that "[t]he [UCCJEA] is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." Syl. Pt. 2, *In re R.D.*, 252 W. Va. 368, 922 S.E.2d 567 (quoting Syl. Pt. 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008)).

The instant matter involves the family court's September 19, 2016, order that set forth the parties' *initial* parenting plan. We previously observed that

> [u]nder the UCCJEA, the key phrase "child custody determination" is defined as "a judgment, decree or other order of a court providing for the legal custody, physical custody[,] or *visitation* with respect to a child. The term includes a permanent, temporary, initial and modification order[.]" W. Va. Code § 48-20-102(c) (2001)[.]

*Josette F. v. Jaret O.*, No. 23-ICA-164, 2024 WL 1256001, at *4 (W. Va. Ct. App. Mar. 25, 2024) (memorandum decision). A "modification" is defined as "a child custody determination that changes, replaces, supersedes or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." W. Va. Code § 48-20-102(k) (2001). Here, Father's petition for contempt, and the family court's sua sponte conversion and award of parenting time, derived from the family court's initial September 19, 2016, order that incorporated the parties' parenting plan. After Father appeared and objected to the stepparent adoption proceeding concerning the child in South Carolina, he sought to have Mother held in contempt by the family court for allegedly disregarding his 2016 court-ordered parenting time for more than eight years. As such, reinstating or modifying Father's parenting time would modify the family court's prior custody determination, requiring the application of the UCCJEA, particularly because two different states were involved in proceedings concerning the custody of the child.[8]

---

[7] Because the UCCJEA is a uniform act, we cite cases from other jurisdictions as persuasive authority on issues the SCAWV has not specifically addressed.

[8] While the UCCJEA expressly states that it does *not* govern adoption proceedings, the SCAWV has noted otherwise, stating that the drafters of the model UCCJEA's comments illustrated their intent that "there are likely to be a number of instances where it will be necessary to apply [the UCCJEA] to an adoption proceeding." *In re R.D.*, 252 W. Va. 368, __ n.14, 922 S.E.2d 567, 575 n.14 (2025) (citation modified).

We previously noted that the UCCJEA utilizes "a multi-step process to determine whether a state has jurisdiction for either an initial child custody determination or a modification of another state's child custody determination." *Josette F.,* 2024 WL 1256001, at *4. There are four jurisdictional grounds that operate in the order of priority, and one must be satisfied before a court of this state can make an initial child custody determination. *See In re K.R.*, 229 W. Va. 733, 740, 735 S.E.2d 882, 889 (2012).[9] "Home state" jurisdiction is paramount of the four jurisdictional bases and requires the child and a parent or person acting as a parent to have lived in that state for at least six consecutive months immediately before the commencement of a child custody proceeding. *See Josette F.,* 2024 WL 1256001, at *4.

Here, it is undisputed that when the parties' divorce proceeding commenced, the child and both of her parents lived in West Virginia. West Virginia was the child's "home state" and, as such, the family court had jurisdiction to make the initial custody determination. *See* W. Va. Code § 48-20-201(a)(1) (2001). The family court acquired "exclusive, continuing jurisdiction" when the 2016 divorce order ratifying the parties' parenting plan was entered. *See* W. Va. Code § 48-20-202(a) (2001). When the courts of this state have acquired "exclusive, continuing jurisdiction," a court confronted with a matter involving a child custody determination must consider whether, during the time between the initial order and the subsequent filing, circumstances have changed so as to divest this state of that jurisdiction. Subsection (a) of West Virginia Code § 48-20-202 defines those circumstances. Pursuant to the UCCJEA, West Virginia's "exclusive, continuing jurisdiction" is retained *until*:

> (1) A court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships; or
> (2) A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

W. Va. Code § 48-20-202(a). Thus, while a court of any state may determine that West Virginia has lost its jurisdiction because the child and both of the child's parents no longer live in West Virginia, only a West Virginia court can determine that West Virginia has lost jurisdiction based on a lack of significant connection and substantial evidence when one parent still lives in West Virginia.

---

[9] The four bases of jurisdiction in order of priority are "home state," "significant connection," "jurisdiction because of declination of jurisdiction," and "default" jurisdiction. *See id.*

Because Father presently resides in West Virginia, only a West Virginia court can make a jurisdictional determination premised on the absence of significant connection and substantial evidence. The statutory language of West Virginia Code § 48-20-202(a)(1) mandates that a West Virginia court which made an initial child custody determination consistent with "home state" jurisdiction loses its jurisdiction when both a significant connection *and* substantial evidence are no longer existent in West Virginia. Thus, if *either* a significant connection *or* substantial evidence is present in West Virginia, the family court's jurisdiction remains "exclusive and continuing."[10]

In recent opinions regarding the application of the UCCJEA, the SCAWV discussed the intent of the drafters of the model UCCJEA by considering their comments to the relevant sections. *See In re R.D.*, 252 W. Va. 368, 922 S.E.2d 567, 575 (2025); *see also In re Z.H.*, 245 W. Va. 456, 470, 859 S.E.2d 399, 413 (2021). While neither SCAWV case involved the application of exclusive, continuing jurisdiction pursuant to West Virginia Code § 48-20-202, both cases considered and relied on the drafters' comments to support their decisions. By that same token, the drafters of the model UCCJEA commented and explained when a state's exclusive, continuing jurisdiction no longer exists pursuant to West Virginia Code § 48-20-202(a)(1). The comment to section 202 states, in part, as follows:

> This is a new section addressing continuing jurisdiction. Continuing jurisdiction was not specifically addressed in the UCCJA. Its absence caused considerable confusion, particularly because the PKPA, § 1738(d), requires

---

[10] We note that Mother also argues the family court should have relinquished jurisdiction because it was an "inconvenient forum" pursuant to West Virginia Code § 48-20-207 (2001). However, section 207 is distinguishable from section 202 insofar as section 202 unequivocally stipulates that a court's exclusive, continuing jurisdiction no longer exists when significant connections and substantial evidence can no longer be found in that state. In contrast, section 207 permits the court possessing jurisdiction "permissive discretion to determine whether or not it wishes to decline to exercise jurisdiction if it determines that it is an inconvenient forum under the circumstances and the court of another state is a more appropriate forum." *Rosen,* 222 W. Va. at 409, 664 S.E.2d at 750; *see also Pokrovskaya v. Van Genderen*, 2021 WY 68, ¶ 9, 487 P.3d 228, 230 (Wyo. 2021) (holding that the UCCJEA's doctrine of forum non conveniens is "discretionary and provides that even though a court has jurisdiction, it may decline to entertain the suit if it finds that it is an inconvenient forum, and a more appropriate forum is available." (citation modified)).

other States to give Full Faith and Credit to custody determinations made by the original decree State pursuant to the decree State's continuing jurisdiction so long as that State has jurisdiction under its own law and remains the residence of the child or any contestant.

. . .

The continuing jurisdiction of the original decree State is exclusive. It continues until one of two events occurs:

1. *If a parent or a person acting as a parent remains in the original decree State*, continuing jurisdiction *is lost when neither* the child, *the child and a parent*, nor the child and a person acting as a parent *continue to have a significant connection* with the original decree State and there is *no longer substantial evidence concerning the child's care, protection, training and personal relations in that State.* In other words, even if the child has acquired a new home State, the original decree State retains exclusive, continuing jurisdiction, so long as the general requisites of the "substantial connection" jurisdiction provisions of Section 201 are met. *If the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.* The use of the phrase "a court of this State" under subsection (a)(1) makes it clear that the original decree State is the sole determinant of whether jurisdiction continues. A party seeking to modify a custody determination must obtain an order from the original decree State stating that it no longer has jurisdiction.

Unif. Child Custody Jurisdiction and Enforcement Act, cmt. 1 § 202 (emphasis added).

The phrase "significant connection" is not defined in the UCCJEA, but the statute's plain, unambiguous language comports with that of a number of jurisdictions that exclusive, continuing jurisdiction is retained as long as the child and the custodial parent have an important, meaningful relationship or contact with the original decree state. *See, e.g.*, *West v. West,* 364 Ark. 73, 84, 216 S.W.3d 557, 562 (2005); *In re Forlenza,* 140 S.W.3d 373, 379 (Tex. 2004); *Benson v. Benson,* 667 N.W.2d 582, 585 (N.D. 2003); *Griffith v. Tressel,* 394 N.J.Super. 128, 141, 925 A.2d 702, 709 (2007); *Grahm v. Superior Court,* 132 Cal.App.4th 1193, 1196, 34 Cal.Rptr.3d 270, 271 (2005); *Fish v. Fish,* 266 Ga.App. 224, 226-227, 596 S.E.2d 654, 656 (2004); *Ruth v. Ruth,* 32 Kan.App.2d 416, 421, 83 P.3d 1248, 1253 (2004). *But see, e.g., In re Marriage of Medill,* 179 Or.App. 630, 641-642, 40 P.3d 1087, 1094 (2002). While the majority of jurisdictions apply the plain and ordinary meaning of the phrase, some of those same jurisdictions *interpret* the phrase more narrowly. *See In re Marriage of Medill,* 179 Or.App. 630, 641-642, 40 P.3d 1087, 1094 (2002)

(stating that to establish a significant connection, there must be maximum rather than minimum contact with the state). On the other hand, it appears that most jurisdictions interpret the phrase more broadly, finding a significant connection exists so long as one parent remains in the state and exercises at least *some* parenting time within the state. *See Grahm v. Superior Court,* 132 Cal.App.4th 1193, 1196, 34 Cal.Rptr.3d 270, 271 (2005) (holding that California retained jurisdiction because one parent who still exercised visitation rights lived there); *see also Ruth v. Ruth,* 32 Kan.App.2d 416, 421, 83 P.3d 1248, 1253 (2004) (finding a significant connection existed where the father resided in Kansas, and the children visited Kansas two weekends each month and eight weeks during the summer); *see also Wallace v. Wallace,* 224 S.W.3d 587, 590 (Ky.App. 2007) (finding a significant connection existed where the children's father and their sibling resided in Kentucky and visitation took place in Kentucky).

Here, Father has not seen, contacted, or financially supported the child in eight years, and acknowledged that he had neither pursued contact nor parenting time, demonstrating that Father has not been the source of a significant connection with West Virginia since June 2017. Mother relocated with the child to South Carolina after the parties' divorce so that her parents and sibling could assist her in the child's caretaking. There is nothing in the record to suggest that the child or Mother have even visited West Virginia since their relocation. Applying the broad interpretation of the term, we conclude that the child and Mother no longer have a "significant connection" to West Virginia pursuant to the facts of the case.

Jurisdiction can still be retained as long as there is "substantial evidence" available in West Virginia concerning the child's care, custody, protection, training and personal relationships. Again, "substantial evidence" is not defined in the UCCJEA, but Merriam-Webster's Dictionary defines "substantial" as "large in amount, size, or number[.]" Merriam Webster Online, https://www.merriam-webster.com/simple/substantial (last visited May 4, 2026). As such, we find that this definition represents the plain, ordinary, and common meaning of the word "substantial" for the purposes of West Virginia Code § 48-20-202(a)(1). Even a broad reading of the statute implies that there must be more evidence available in West Virginia than South Carolina concerning the child's care, custody, protection, training and personal relationships to satisfy retaining jurisdiction pursuant to section 202(a)(1). Similarly, the SCAWV has stated that "[t]he [UCCJEA] is premised on the theory that the best interests of a child are served by limiting jurisdiction to modify a child custody decree to the court which has the maximum amount of evidence regarding the child's present and future welfare." *State ex rel. Conforti v. Wilson*, 203 W. Va. 21, 26, 506 S.E.2d 58, 63 (1998) (citation modified).

In the present matter, the child was almost two years old when she relocated to South Carolina with Mother and as the family court undisputably found, the last time Father had any contact with the child was in South Carolina in June of 2017. Any evidence available in West Virginia concerning the child would be limited to the first two years of the child's

life. The child was ten years old when Father filed his petition for contempt on April 25, 2025. Because the child has remained in South Carolina since the parties' divorce, any evidence concerning her would only be available in South Carolina, where she has resided for more than 80% of her life. Therefore, we conclude that substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available in West Virginia and has not been for quite some time; rather, South Carolina has the utmost amount of evidence regarding the child's present and future welfare.

The family court's findings reinforce our determination that the child and Mother no longer have a "significant connection" with West Virginia and "substantial evidence" concerning the child is no longer present in West Virginia. Particularly, the court's following findings support our decision: West Virginia is not the child's home state; the child has resided in South Carolina with Mother since the parties' divorce in 2016; Father has not exercised any visitation or supported the child financially since 2017; there has been complete lack of contact between Father and the child for eight years; the child is a stranger to Father; and there has been no activity of record in the case from October 12, 2017, through April 25, 2025.

Like the drafters' comment to section 202 of the UCCJEA, because the undisputed facts of the matter demonstrate that the relationship between the child and Father is so attenuated that a significant connection and substantial evidence can no longer be found in West Virginia, the family court no longer has exclusive, continuing jurisdiction pursuant to West Virginia Code § 48-20-202(a)(1).[11] For these reasons, we conclude that the family court erred by failing to enter an order relinquishing jurisdiction to South Carolina pursuant to section 202(a)(1) of the UCCJEA.

---

[11] We note that the family court reasoned at least twice in its order that it properly retained jurisdiction partly due to South Carolina's conclusion that it did not have jurisdiction. While the family court may not have relied on South Carolina's conclusion, we want to make it clear that pursuant to the UCCJEA, South Carolina did not properly have jurisdiction and was unable to enjoy jurisdiction *until* a West Virginia court, the original decree state, issued an order determining that it either did not have jurisdiction or that South Carolina was a more convenient forum. *See* West Virginia Code §§ 48-20-202(a)(1), 48-20-203(1) (2001), and 48-20-207; *see also Suzanne H. v. Jason L.*, No. 14-1185, 2015 WL 5793036, at *3 (W. Va. Oct. 2, 2015) (memorandum decision) (holding that a West Virginia court could not make findings that a Georgia court no longer had exclusive, continuing jurisdiction and/or that West Virginia was a more convenient forum because the determination must come from the Georgia court); *see also Josette F.,* No. 23-ICA-164, 2024 WL 1256001, at *7 (W. Va. Ct. App. Mar. 25, 2024) (memorandum decision) (holding that a West Virginia court did not have jurisdiction unless the original decree state determined that it no longer had exclusive, continuing jurisdiction, or that West Virginia was a more convenient forum).

Accordingly, we vacate the family court's July 21, 2025, Order Denying Contempt, Converting Action and Scheduling Further Proceedings and remand the matter to the family court with instructions to enter an order relinquishing jurisdiction based on the foregoing reasons.

Vacated and Remanded with Instructions.

**ISSUED:** June 2, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White