OPINION OF THE COURT
Jeffrey S. Sunshine, J.
By order to show cause dated September 22, 2004, plaintiff father moves for an order: (1) modifying the provisions of the parties’ judgment of divorce, dated April 24, 2002, so as to grant him full legal and residential custody of the child of the marriage, born January 1, 1997; (2) appointing a law guardian to represent the interests of said child; and (3) directing that the residence of said child remain within the State of New York pending the hearing of this application; the order to show cause granted a temporary restraining order providing that the child shall remain in this state and shall not be removed from the jurisdiction pending hearing of the application. By order to show cause dated October 20, 2004, defendant mother moved for an order directing plaintiff to immediately return the child to her, as his custodial parent.
Facts and Procedural Background
The parties were married in Brooklyn on October 31, 1996. Defendant gave birth to the child on January 1, 1997 in Norway; defendant had returned to Norway to avail herself of health insurance coverage and to be near her family. The child and defendant mother returned to Brooklyn soon after the child’s birth and the family resided in Kings County, New York, throughout their marriage.
Shortly after plaintiff commenced the underlying divorce action, by written document dated March 8, 2002, the parties agreed that (parties’ names omitted):
“1. . . . [Defendant] will reside in Norway with our son, . . . [the child] . . . for the period of time from the summer of 2002 up to and including the summer of 2004. This change in residence is being done to further . . . [defendant’s] education.
“2. During this period of time, . . . [defendant] will make available and bring . . . [child] to the United States to visit . . . [plaintiff] on an [sic] as frequent *425 a basis as possible. At no time, though, interfering with . . . [child’s] or . . . [defendant’s] class schedule or educational commitments.
“3. During this period of time . . . [child] will be enrolled in school in Norway.”
Plaintiff alleges that he also agreed to pay the child’s direct living expenses, such as school tuition, clothing and other necessities, as well as the expenses incurred when the child visited with him during each of the child’s school vacations. Plaintiff further asserts that the parties’ agreement contemplated that defendant and the child would return to Brooklyn at the end of the two-year period, in June 2004.
By judgment dated April 24, 2002, the parties were divorced. Pursuant thereto, the mother and father shared joint custody of the child, who was to reside with his mother; the father was to have “reasonable rights of visitation away from the custodial residence.” As is also relevant here, the judgment provided that “the Family Court shall have concurrent jurisdiction with respect to any future issues of maintenance, support, custody and visitation.”
In June 2002, the mother and the child relocated to Norway in accordance with the March 8, 2002 agreement. During 2002 and 2003, the child spent extended time with plaintiff during his school recesses. Thereafter, plaintiffs contact with his son was limited; plaintiff contends that defendant changed her residence and did not provide plaintiff with her address or telephone number. In early June 2004, plaintiff received a letter from defendant’s attorney, advising him that defendant was engaged to a local man, that she did not want to return the child to New York and that she wanted plaintiff to agree to allow the child to reside in Norway permanently. The letter further advised plaintiff that until the situation was resolved, defendant did not wish to travel to the United States with the child. Plaintiff accordingly retained an attorney to respond to that letter and defendant agreed to allow plaintiffs mother and sister to bring the child to Brooklyn to visit with him from September 10, 2004 through October 2, 2004. Once the child was in Brooklyn, plaintiff refused to return him to defendant and the instant proceeding was commenced. Defendant arrived in New York on October 18, 2004, seeking to obtain custody of the child.
The Parties’ Contentions
In support of his request that he be awarded legal and residential custody of the child, plaintiff alleges that the child told *426 plaintiff that he was not involved in any extracurricular activities or organized sports and that he didn’t do anything most of the time. Plaintiff further contends that the child would receive a better education in Brooklyn, from the private school where he is currently enrolled and where he attended prekindergarten and kindergarten, than he would receive in public school in Norway. Further, plaintiff is engaged to a woman with whom the child is very comfortable; plaintiff and his fiancée intend to create a strong home life for the child. Plaintiff also asserts that defendant has not provided the child with a stable life in Norway, since “he was shuffled around on a regular basis”; she gives him sleeping pills so that he will sleep; he has to share a room with the daughters of defendant’s fiancée; he is withdrawn and afraid to be alone; and he is “expressing matters of a sexual nature in a way that is far too advanced for his age,” which plaintiff believes is the result of the child witnessing his mother and her boyfriend engage in such activity.
Plaintiff further points out that defendant’s life had been permanently based in New York when the custody arrangement was put in place, since she had moved to New York in 1991 and had worked here and obtained a green card. Hence, plaintiff had no reason to believe that she would not return the child to Brooklyn after she completed her education. Plaintiff also avers that he has learned that defendant’s engagement has been ended, so that she no longer has a reason to refuse to return to New York.
In addition, plaintiff requests that a law guardian be appointed to represent the child’s interests in this proceeding, since the child “can speak for himself’ and “state his desires and the reasons behind them,” even though he is only l1/2 years old. Plaintiff also alleges that he wishes that the child and his mother continue to see each other and that a parental access agreement so providing was put in place shortly after she arrived in New York.
Defendant opposes plaintiffs demand for relief, arguing that the child should return to Norway, where he has lived for the past 27 months and where he has an extensive family. Defendant further asserts that the child attends school there, is happy, well adjusted and participates in numerous extracurricular activities, including soccer and band. Further, the child is comfortable with her fiancée, whom she plans to marry on May *427 14, 2005.[1] They live in a private, three-bedroom home that is located on an acre of land and has a built-in swimming pool; although the child shared his bedroom with the seven-year-old daughter of her fiancée, it was a large room and the children were always properly supervised. Defendant denies the remaining accusations made against her by plaintiff.
Defendant also asserts that she supports the child on her salary as a licensed nurse and that plaintiff does not contribute any money; a support agency in Norway has determined that plaintiffs support obligation is 11% of his income. Defendant also argues that this court does not have jurisdiction over this matter, since plaintiff abducted the child and Norway is his home state for purposes of this custody dispute. Defendant does not oppose plaintiff’s request for the appointment of a law guardian.
Discussion
The instant custody dispute appears to be a case of first impression on the issue of continuing exclusive jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) in a postjudgment matrimonial case. Few cases have yet to address the issue of the application of the newly enacted UCCJEA, which replaced the Uniform Child Custody Jurisdiction Act (UCCJA) as of April 28, 2002 (Domestic Relations Law § 75; L 2001, ch 386; see generally W.R.N. v A.J.S., NYLJ, Feb. 17, 2004, at 22, col 3; Hector G. v Josefina P., 2 Misc 3d 801 [2003]).
Accordingly, in seeking to determine applicability, the court must be guided by the legislative intent, which provides that:
“This act shall take effect 180 days after it shall have become a law and shall apply to all actions and proceedings commenced on or after such date; provided, however, that a motion or other request for relief made in a child custody proceeding or to enforce a child custody determination which was commenced before the effective date of this act shall be governed by the law in effect at the time the motion or other request was made.” (L 2001, ch 386, §2.)
In applying these guiding principles, the court also notes that it is an anomaly in matrimonial practice in New York State that *428 parties are allowed to litigate ad infinitum, under the same index number, seeking postjudgment redress. It appears that with the exception of an action to enforce a money judgment, however, it is appropriate in a postjudgment proceeding (akin to a new proceeding) to require personal service anew in order to gain jurisdiction over a party.[2]
Also relevant herein is the fact that the underlying divorce action is no longer pending, since the judgment of divorce was signed on April 24, 2002 (see generally Renzulli v McElrath, 185 Misc 2d 242, 248 [2000], affd 286 AD2d 335 [2001]). It is clearly established law that an action terminates in a judgment (see e.g. Slater v American Min. Spirits Co., 33 NY2d 443 [1974], citing CPLR 5011; Weinstein-Korn-Miller, NY Civ Prac 1111 103.06, 411.00, 2211.02). Also relevant is the fact that the parties’ judgment of divorce provided that Family Court shall have concurrent jurisdiction over issues of custody and visitation. Pursuant to Family Court Act § 652 (b) (ii), the Family Court may “determine an application to modify the order or judgment awarding custody or visitation upon a showing that there has been a subsequent change of circumstances and modification is required.”
In view of the above, the court rejects defendant’s assertion that the UCCJA controls because the underlying divorce action was commenced March 7, 2002. In so holding, the court first recognizes that the legislative intent indicates that the prior law was intended to apply to “a motion or other request for relief made in a child custody proceeding or to enforce a child *429 custody determination which was commenced before the effective date of this act” (emphasis added). Thus, since this application to change custody was brought by order to show cause dated September 22, 2004, long after the effective date of April 28, 2002, the UCCJEA controls. That this is the only conclusion that may be reached is further supported by the fact that the parties had the option of commencing the instant proceeding by supplemental petition filed in the Family Court in accordance with Family Court Act § 652 (b) (ii), which would certainly be characterized as a new proceeding pursuant to the UCCJEA. Thus, if the UCCJEA is not held to apply to situations such as the one at bar, the UCCJA would be held to control in applications to modify custody brought in the Supreme Court, while the UCCJEA would control in applications to change custody brought in Family Court where a new petition clearly would need to be served in the present dispute (see Matter of McCormick v Franklin, 13 AD3d 378 [2004]). Enactment of the UCCJEA should not be interpreted in a manner that would allow such blatant forum shopping.
In addition, if Domestic Relations Law § 75 is not so interpreted, the UCCJA, and not the UCCJEA, would be controlling far into the future, until all children born to parties whose judgment of divorce was signed prior to April 28, 2002 reach majority. Had this been the intent of the Legislature, the effective date of the statute would more appropriately have been controlled by the date of the judgment of divorce, rather than by the date of the commencement of the proceeding (see generally Matter of Brillhart v D’Andreamatteo, 296 AD2d 869, 870 [2002] [UCCJEA did not apply because the subject contempt petition, in which petitioner alleged that respondent violated the court’s 1998 visitation order, was filed prior to April 28, 2002]). Holding that the UCCJA is applicable to all custody disputes for parties divorced prior to April 28, 2002 would defeat the public policy of this state established in the UCCJEA which includes the new concept of continuing exclusive jurisdiction. Accordingly, the court concludes that the UCCJEA applies to the instant dispute and the Legislature obviously intended it to apply to all applications to modify custody where such applications are made after the effective date of the statute.
Having so held, defendant’s sole reliance upon former Domestic Relations Law § 75-d to establish jurisdiction on the sole concept of a six-month home state rule is misplaced. In addressing the issue of jurisdiction, it must first be noted that pursuant *430 to Domestic Relations Law § 75-d, “[a] court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying this title and title two of this article.” Pursuant to Domestic Relations Law § 76-a, the court of New York, as the court that issued the most recent custody determination, retains exclusive and continuing jurisdiction over the instant custody dispute:
“1. Except as otherwise provided in section seventy-six-c of this title, a court of this state which has made a child custody determination consistent with section seventy-six or seventy-six-b of this title has exclusive, continuing jurisdiction over the determination until:
“(a) a court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child’s care, protection, training, and personal relationships; or
“(b) a court of this state or a court of another state determines that the child, the child’s parents, and any person acting as a parent do not presently reside in this state.”
Guidance for resolving the instant dispute is also provided by the recent case of Stocker v Sheehan (13 AD3d 1 [2004]), in which the Appellate Division, First Department, applied the “exclusive, continuing jurisdiction” provision of the Rhode Island UCCJEA, which is substantially similar to the New York provision.[3] Therein, the court held that New York did not have jurisdiction over an application to modify the parties’ visitation *431 arrangement because a Rhode Island court had issued an order allowing the mother to relocate to New York, subject to extensive visitation; the father continued to reside in Rhode Island; and there was no showing that the Rhode Island courts had declined to exercise jurisdiction granting a petition to change custody.
Applying the above principles herein, it is clear that New York possesses exclusive, continuing jurisdiction of the parties’ custody dispute pursuant to Domestic Relations Law § 76-a, since plaintiff continues to reside in New York. “[W]hen the custodial parent and child relocate, leaving the non-custodial parent in New York, this state continues to possess jurisdiction (unless and until a New York court finds the lack of a significant connection)” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 76-b, 2004 Pocket Part, at 115). The court declines to find that the parties no longer have a substantial connection with this jurisdiction, since the child continued to return to New York for lengthy visits with his father throughout the time that he and his mother resided in Norway and there was a written agreement which provided the period of time that the child was to be in Norway.[4]
In interpreting Domestic Relations Law § 76-b,[5] which pertains to modification of custody determinations, it is equally *432 clear that “[t]he essential principle is that a state which maintains exclusive, continuing jurisdiction may entertain and determine a modification action” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 76-b, 2004 Pocket Part, at 115).[6] That this court should continue to exercise jurisdiction is also supported by the fact that pursuant to the March 8, 2002 agreement executed between the parties in New York, defendant agreed to return the child to New York after the summer of 2004; the courts of New York should accordingly retain jurisdiction to enforce that agreement. In providing that the child would “return” to New York clearly establishes that the parties intended for New York to be considered the child’s permanent home state and that this agreement was nothing more than a temporary relocation agreement, pursuant to which both parties agreed to allow the child to temporarily leave the state for a fixed period of time.
Jurisdiction of this court is also proper pursuant to the federal Parental Kidnaping Prevention Act (28 USC § 1738A [PKPA]). The UCCJEA was intended “to promote uniformity concerning child custody and visitation as to children who move from one state to another and to bring those laws into conformity with federal law, including the Parental Kidnaping Prevention Act” (Stocker, 13 AD3d at 4). Pursuant to the PKPA, a child custody or visitation determination made by a court of a state is consistent with the provisions of the section only if the court has jurisdiction under the law of such state:
“The Federal Parental Kidnapping Prevention Act (PKPA), which was enacted shortly after the UC-CJA and is binding on the states by virtue of the constitutional supremacy clause, established a rule equivalent to exclusive, continuing jurisdiction through the following provision:
“ ‘The jurisdiction of a State which has made a child custody determination consistently with the provisions of this section continues as long as . . . such state remains the residence of the child or of any contestant’ [28 U.S.C. § 1738A(d)].” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 76-b, 2004 Pocket *433 Part, at 113.)
These requirements have been met herein. The court rejects the plaintiff’s contention that the child has been kidnapped and should be returned to Norway. While certainly the court does not condone the “ruse” by which the child was returned, both parties were engaged in seeking prompt judicial intervention and the mother clearly and intentionally violated the parties’ March 8, 2002 agreement.
Conclusion
For the above-stated reasons, Supreme Court, Kings County, has exclusive, continuing jurisdiction over the instant custody dispute and the court will hear this matter. Accordingly, the court directs that the child shall continue to reside in New York State pendente lite, and that neither party shall remove him from the state, or cause him to be so removed, without permission from the court.

. Defendant does not address plaintiffs assertion that her engagement has been terminated.

. (See generally Haskell v Haskell, 6 NY2d 79, 81-82 [1959] [an application under section 1171-b of the Civil Practice Act, the predecessor to Domestic Relations Law § 244, should be treated as a motion in an action so that no service of new process was necessary for the purpose of acquiring jurisdiction over defendant’s person], cert denied 361 US 876 [1959]; Gunsburg v Gunsburg, 173 AD2d 232 [1991] [enforcement proceedings pursuant to Domestic Relations Law § 244 do not constitute a new action, but are treated as the continuation of the underlying divorce proceeding, so that service may be made upon the law firm which represented the defendant in the prior proceeding].) It must be recognized, however, that this procedure is specifically authorized by Domestic Relations Law § 244, which permits a party to a matrimonial action to apply for an order directing the entry of a money judgment against an adverse party who defaults in paying “any sum of money as required by [a] judgment or order directing the payment thereof,” and hence provides an expedited procedure to resolve issues of arrearages (see e.g. Mowers v Mowers, 229 AD2d 941 [1996]). Thus, a party is entitled to obtain entry of a money judgment pursuant to Domestic Relations Law § 244 only where the judgment of divorce or a subsequent order contains specific language directing payment of a sum of money.

. Rhode Island General Laws § 15-14.1-14 provides, in pertinent part:
“Exclusive, continuing jurisdiction.
“(a) Except as otherwise provided, a court of this state which has made a child custody determination consistent with this chapter has exclusive, continuing jurisdiction over the determination until:
“(1) A court of this state determines that neither the child, the child’s parents, and any person acting as a parent [have] a significant connection with this state and that substantial evidence is no longer available in this state concerning the child’s care, protection, training and personal relationships; or
“(2) A court of this state or a court of another state determines that the child, the child’s parents, and any person acting as a parent do not presently reside in this state.
“(b) A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify *431 that determination only if it has jurisdiction to make an initial determination pursuant to this chapter.” (See also Domestic Relations Law § 76-a [1].)

. In this regard, plaintiff alleges that during the summer of 2002, the child stayed with him for between six and eight weeks and during the Christmas/winter recess, stayed with him for about five weeks. In late February and early March 2003, plaintiffs parents brought the child to him for another two to three weeks. In the summer of 2003, the child visited with plaintiff for five weeks; during Christmas/winter recess, the child visited with plaintiff for almost four weeks.

. Domestic Relations Law § 76-b, “Jurisdiction to modify determination,” provides:
“Except as otherwise provided in section seventy-six-c of this title, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under paragraph (a) or (b) of subdivision one of section seventy-six of this title and:
“1. The court of the other state determines it no longer has exclusive, continuing jurisdiction under section seventy-six-a of this title or that a court of this state would be a more convenient forum under section seventy-six-f of this title; or
“2. A court of this state or a court of the other state determines that the child, the child’s parents, and any person acting as a parent do not presently reside in the other state.”

. While the parties’ judgment of divorce states that Family Court retains concurrent jurisdiction with the Supreme Court to resolve custody and visitation disputes, subject matter jurisdiction is bestowed by statute and constitution only (Brillhart, 296 AD2d at 871, citing Siegel, NY Prac § 8, at 9-10 [3d ed]).