[848 NYS2d 147]

In the Matter of MICHAEL McC., Appellant, v MANUELA A., Respondent.

First Department, December 27, 2007

### APPEARANCES OF COUNSEL

*Segal & Greenberg LLP*, New York City (*Philip C. Segal* of counsel), for appellant.

*Jeffrey Cylkowski*, New York City, for respondent.

### OPINION OF THE COURT

CATTERSON, J.

This appeal arises out of a Family Court determination that the court lacked jurisdiction in a custody modification proceeding after the mother fled New York with her five-year-old son to Italy in the middle of the proceeding. We reverse, on the law, and as a matter of public policy.

Petitioner-appellant father, a United States citizen, and respondent mother, an Italian national, who is also a United States citizen, were married on August 3, 1992 in the United States. They have one child, Liam, who was born in Italy in July 2001 and who has dual citizenship.

On April 6, 2004, a judgment of divorce was entered in New York County. The court determined however that it had no jurisdiction over custody issues because Liam had lived in New York for only 9 out of his 27 months since birth. Thus, there were no court orders in New York with regard to custody, visitation or maintenance. Subsequent to filing divorce proceedings in New York, the mother filed parallel proceedings in Rome and the father consented to the court in Rome entering orders for custody and visitation.

On December 2, 2005, the Civil Court of Rome granted the divorce and awarded the mother sole custody of Liam. The order permitted the mother to decide whether she wanted to reside in Italy or in the United States and provided for the father to have visitation under both circumstances. On July 14, 2006, the father filed an appeal in the Appeal Court of Rome requesting joint custody of Liam and for a change of visitation.

Meanwhile, as of January 2005, the mother (with Liam), and the father were living separately in New York. On August 16, 2006 the mother petitioned Family Court in New York to (1) modify the Italian court's order of visitation and (2) to suspend

the father's visitation rights with Liam on the grounds that the father had abused Liam. The father cross-moved, by petition dated November 1, 2006, seeking to modify the Italian order to obtain sole custody of Liam.

On or about March 6, 2007, two days before the Family Court's determination that the mother's allegations of abuse were unfounded, the mother fled with Liam to Italy in violation of a specific court order, dated January 22, 2007, not to take the child out of New York State. Thereafter, on March 8, 2007, the father filed a violation petition against the mother under the Uniform Child Custody Jurisdiction and Enforcement Act (here-inafter referred to as UCCJEA). Subsequently, the court dismissed the family offense petition filed by the mother. It also issued three orders: (1) stating that New York was Liam's home state and that the father was authorized to accept immediate physical custody of him from law enforcement personnel upon execution of the warrant directing Liam's seizure; (2) awarding the father temporary legal custody; and (3) stating that the mother's removal of Liam to Italy violated the court's express order, was contrary to the law of New York and was wrongful, directing her to return the child to New York, and requesting state and federal authorities as well as the Italian authorities to assist in the enforcement of the order.[1] On March 22, 2007, the mother's attorney appeared in Family Court alone and indicated on the record that the mother had fled to Italy because "she does not believe she is getting a fair hearing [in Family Court]."

Meanwhile, in Italy, the mother had appeared before the Appeal Court of Rome on March 8, 2007 to get an interim ruling that she still had sole custody of Liam, and to reopen the investigation into her abuse allegations.

Thereafter, on April 6, 2007, the Family Court decided, sua sponte, to reconsider the propriety of the warrants and orders and calendared the matter for April 17, 2007 to hear oral argument. At this point, the court vacated the order granting temporary custody to the father, as well as the order directing that Liam be returned to the United States on the ground that the court did not have the legal authority to issue them since the Italian court had ordered that the mother have sole custody. It did not vacate the order for the arrest of the mother since she had "clearly violated th[e] [family] court's order" by taking

---

1. This order apparently erroneously contained a reference to the Hague Convention on the Civil Aspects of International Child Abduction (TIAS No. 11670, 1343 UNTS 89 [1980]) instead of the UCCJEA.

Liam out of the jurisdiction. Specifically, the court was concerned that its issuance of the warrants and orders was not in conformity with the law as it was enunciated in *Croll v Croll* (229 F3d 133 [2d Cir 2000], *cert denied* 534 US 949 [2001]). In *Croll*, the circuit court held that pursuant to the Hague Convention, a noncustodial parent could not compel the return of a child who had been removed to a foreign country by the custodial parent.

After hearing oral argument on April 17th and April 25th, the court dismissed the mother's petition for modification of an order of visitation of another court due to both her failure to appear before the court and the fact that the child abuse allegations were deemed to be false. The court also determined that the court's prior orders would be vacated to delete any direction that Liam be returned to New York and/or placed in the father's custody.

In analyzing whether the father's petitions should be dismissed, the court commented on the "very detailed and explicit" custody order of the Italian court that contemplated the mother "living possibly in the United States with Liam, living possibly in Italy with Liam." The court then concluded that there was nothing in that order that prohibited the mother "going back and forth."[2] Notwithstanding this ruling, the Family Court expressly determined to leave the warrant previously issued for the mother's arrest in effect.

On May 11, 2007, the father moved for an order directing that his petition for sole custody of Liam be calendared for an inquest and a final disposition consistent with Liam's best interests. In an oral decision on the record on June 12, 2007, the Family Court denied the motion for an inquest, vacated all outstanding arrest warrants, and sua sponte dismissed the proceeding in all respects. The court concluded that, while it might have jurisdiction to modify custody and enforce visitation if the mother returns, it had no "legal authority" to do so until then because she had gone to Italy and the Italian court had given her that choice.

On appeal, the father asserts that Family Court did and does have jurisdiction, that his cross petition was properly before the court and that Family Court improperly denied the inquest on custody. For the reasons set forth below, we agree.

---

**2.** However, the court apparently overlooked the provision in the Italian order that required the mother to inform the father at least 30 days prior if she was to return to Italy.

The Family Court had jurisdiction to modify the custody order of the Italian court because New York was the child's "home state" at the time both the petition and the cross petition were filed. "Home state" as defined by the Domestic Relations Law is the state in which a child has lived with a parent for at least six consecutive months immediately before commencement of a child custody proceeding. (Domestic Relations Law § 75-a [7].)

The UCCJEA, which replaced the Uniform Child Custody Jurisdiction Act (hereinafter referred to as UCCJA) as of April 28, 2002, is codified in article 5-A of the Domestic Relations Law. While the "home state" provision was always a basis for establishing jurisdiction in custody proceedings (*see Matter of Michael P. v Diana G.*, 156 AD2d 59, 64 [1990], *lv denied* 75 NY2d 1003 [1990]), the newly-enacted UCCJEA elevates the "home state" to paramount importance in both initial custody determinations and modifications of custody orders. (*See* Domestic Relations Law § 76; *see generally* Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 76, 2007 Pocket Part, at 114, Domestic Relations Law § 76-b, 2007 Pocket Part, at 149-150; *see also Hector G. v Josefina P.*, 2 Misc 3d 801, 809 [Sup Ct, Bronx County 2003] [jurisdictional priority, under the UCCJEA, is always conferred on a child's "home state"].)

Specifically, section 76 of the Domestic Relations Law forms the foundation of the UCCJEA and governs virtually every custody proceeding. It is designed to eliminate jurisdictional competition between courts in matters of child custody and the substantial confusion that arose under its predecessor, the UCCJEA. Thus, under New York's UCCJEA, a New York court has jurisdiction to modify a child custody determination made by a court of another state[3] if this state is the "home state" of the child. (Domestic Relations Law § 76-b.) Moreover, the New York court continues to maintain exclusive jurisdiction until a determination is made that neither the child nor the child and one parent have a significant connection with this state, or where the court determines that neither the child, and neither of the child's parents reside in the state.[4] (*See* Domestic Relations Law § 76-a [1] [a], [b]; *see also Vernon v Vernon*, 100 NY2d 960, 967-969 [2003] [applying Domestic Relations Law § 76-a].)

---

3. A court of this state shall treat a foreign country as if it were a state of the United States. (Domestic Relations Law § 75-d; *Arnold v Harari*, 4 AD3d 644 [3d Dept 2004].)

4. For purposes of this opinion we do not include the entire wording of these paragraphs, which also specify any "person acting as a parent."

Further, a state is considered to be the child's "home state" pursuant to Domestic Relations Law § 75-a (7) where the child has been wrongfully removed to another jurisdiction. In such instances, the child's stay outside of New York is considered as nothing more than a period of temporary absence and as part of the six-month period. (*Matter of Krymko v Krymko*, 32 AD3d 941 [2d Dept 2006] [finding that the home state determination must be made without consideration of the parent's wrongful conduct in removing the child].) The fact that a custodial parent flees in the middle of a custody litigation commenced properly in New York simply does not deprive the New York courts of subject matter jurisdiction to issue an order concerning custody, visitation, and related issues. (*Arnold v Harari*, 4 AD3d at 646-647 [finding the UCCJEA applicable to situation where children were transported to and from Israel and where wife had commenced Israeli proceeding].)

Here, there is uncontroverted evidence that the parties, mother, father and child, were living in New York since January 2005, a period of 19 months prior to the mother's petition for a modification of the initial custody order, and 22 months prior to the father's cross petition for sole custody. Thus, the record establishes that New York has jurisdiction in this custody modification proceeding. Moreover, the mother's flight to Italy cannot deprive New York of continuing jurisdiction in this proceeding so long as the father resides here. (*See Vernon v Vernon*, 100 NY2d 960 [2003] [where the court relied upon the fact that the father continued to reside in New York in establishing its jurisdiction over custody modification].)

On appeal, however, the mother argues that "home state" notwithstanding, the New York court does not have jurisdiction because the father's appeal of the Italian court's sole custody order is pending in Rome. She relies on Domestic Relations Law § 76-e (1) which explicitly states:

> "a court of this state may not exercise its jurisdiction under [article 5-A] if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this article, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum . . . ."

The mother's assertion is correct in that while a New York court may have jurisdiction based on a "home state" determi-

nation, there may be, in some cases, other factors which preclude it from exercising that jurisdiction such as when a proceeding concerning custody has been commenced in a court of another state. (*See* Domestic Relations Law § 76-e; *see also* Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 76-e, 2007 Pocket Part, at 165-168; *see also Vanneck v Vanneck*, 49 NY2d 602 [1980].) Additionally, a New York court that can establish its jurisdiction may nevertheless decline to exercise it on other grounds like inconvenient forum (Domestic Relations Law § 76-f) or because a party engaged in unjustifiable conduct (Domestic Relations Law § 76-g).

In this case, the mother's reliance on Domestic Relations Law § 76-e is misplaced. Even though there is an appeal pending in Rome, the mother's contention nevertheless fails to recognize that the "pending" proceeding must be pending in a jurisdiction that is "substantially in conformity" with the provisions of article 5-A. In other words, it must be a jurisdiction that was either the "home state" when the proceeding was commenced or satisfies one of the other jurisdictional predicates of section 76. (*See Kilcullen v Bubanj*, 116 AD2d 470 [1986] [given absence of jurisdictional predicate for Pennsylvania court to make custodial determination, unnecessary for trial court to suspend action]; *see also Matter of Uhl v Uhl*, 244 AD2d 935 [1997] [in order for a proceeding in another state to result in a dismissal of the proceeding in New York, the foreign court must exercise jurisdiction in substantial conformity with the UCCJA]; *cf. Stocker v Sheehan*, 13 AD3d 1 [2004] [where New York recognized that Rhode Island had continuing jurisdiction, despite the fact that the child was living in New York, because the father lived in Rhode Island and Rhode Island had not yet declined to exercise jurisdiction].)

In this case, when the appeal was filed by the father in July 2006, the Italian court did not have jurisdiction "substantially in conformity" with the UCCJEA since by that time New York, not Italy, was the "home state." In July 2006, both parties and Liam had been living in New York for approximately 18 months. (*Cf. Vanneck v Vanneck*, 49 NY2d 602 [1980].)[5]

It is also worth noting that the mother's reliance on *Matter of Plum v Plum* (216 AD2d 302 [1995]) and *Matter of Kotary v La-*

---

**5.** While the dissent views this appeal as part of an ongoing custody proceeding initiated by the mother with the father's approval, in April 2004, we suggest that in any court that has jurisdiction "substantially in conformity" with article 5-A, this appeal would be untimely filed, considering

*varnway* (309 AD2d 1236 [2003]) is meritless. In these cases, jurisdiction was in substantial conformity with the UCCJEA insofar as the subject states were indisputably the child's "home state."

Further, contrary to the mother's argument, the court also erred in ruling New York to be an inconvenient forum pursuant to Domestic Relations Law § 76-f (1). The court failed to consider the relevant statutory factors (*see* Domestic Relations Law § 76-f [2] [a]-[h]; *Matter of Greenidge v Greenidge*, 16 AD3d 583 [2005]; *Matter of Rey v Spinetta*, 8 AD3d 393 [2004]), and by commencing the instant action in New York, the mother purposely availed herself of this state's jurisdiction. Also, given that the child has attended school in New York and many of the relevant documents and witnesses are in New York it cannot be said that New York is an inconvenient forum. (*See Koons v Koons*, 161 Misc 2d 842 [Sup Ct, NY County 1994] [finding that New York was not inappropriate forum for resolution of custody dispute between American father and Italian mother where child had significant ties to and had spent significant part of his life in state]; *see also Vernon v Vernon*, 100 NY2d at 971 [finding that it is particularly relevant to the jurisdictional determination that the forum in which the litigation is to proceed has optimum access to relevant evidence].) Finally, as the court below noted, the Italian court's order did not specifically prohibit jurisdiction eventually passing to another state.

More importantly, while the court below made much of the Italian order granting the mother the choice of where to live with Liam, it erred in concluding that the choice of residence locations also gave the mother a choice of jurisdictions, and that New York therefore lost its jurisdiction when the mother left for Italy. In April of 2004, the Italian court was the proper jurisdiction for the initial custody proceeding because the child had lived in New York for only 9 out of his 27 months since birth,

the seven month lapse between the initial custody order of the Italian court and the father's filing of the appeal. (*See* CPLR 5513.) Rather, a court exercising jurisdiction "substantially in conformity" with article 5-A is obliged to view the "appeal" as a petition for modification of an initial custody order and thus to find as we have done that the Italian court no longer has exclusive, continuing jurisdiction pursuant to Domestic Relations Law §§ 76-a and 76-b.

The dissent's view of section 76-e (1) would necessarily present the father with a "Hobson's choice" of forgoing any remedy in Italy, where the mother fled with the child, or filing an appeal of the Italian order and moving to dismiss the mother's New York petition on the grounds that Italy had exclusive jurisdiction. Of course, this would only encourage the mother to flee to Italy to act on her claim of abuse against the father.

and those nine months were apparently not immediately preceding the commencement of the action. By the time the mother filed to modify the Italian custody order in August 2006 in Family Court, Italy no longer had exclusive, continuing jurisdiction pursuant to Domestic Relations Law § 76-a because New York had become the child's "home state" and both parents were living in New York by that time.[6]

To affirm the order of the Family Court would essentially give the mother a choice of jurisdictions, and thus the concomitant right to disregard any orders of the court of which she availed herself when she failed to obtain the desired outcome. It is precisely to avoid situations like this that the UCCJEA was enacted.

Finally, contrary to the mother's assertion, *Croll v Croll* (229 F3d 133 [2000]) and the Hague Convention do not apply to the case at bar because the present proceeding was expressly brought in state court under the UCCJEA and was not an action brought under the Hague Convention. In any event, *Croll* and the Hague Convention apply to situations where a child is wrongfully removed from a foreign country, brought to and then retained in the United States. Here, since the child's habitual residence is found within the United States the Hague Convention and *Croll* simply bear no relevance.

Accordingly, order, Family Court, New York County (Karen I. Lupuloff, J.), entered on or about June 12, 2007, which dismissed petitioner's cross petition for modification of a custody order issued by a foreign court, should be reversed, on the law, without costs, the cross petition reinstated and the matter remanded for further proceedings consistent with the decision herein, including a custody inquest.

LIPPMAN, P.J. (dissenting in part). The relief the majority would afford petitioner father on his cross petition seeking to modify the child custody decree of the Italian court is, at the very least, premature. It rests upon an assertion of jurisdiction that would, on this record, appear to be forbidden by Domestic Relations Law § 76-e (1), and raises the distinct possibility of competing child custody determinations—precisely the eventuality that the Uniform Child Custody Jurisdiction and Enforce-

---

**6.** Contrary to the dissenting view, it is not the father or the court below who are proceeding "headlong" to a hearing, rather it was the mother who petitioned Family Court for a modification on the grounds (later found to be baseless) of sexual abuse of the child and then absconded before any such hearing could take place.

ment Act (UCCJEA) (Domestic Relations Law art 5-A) was designed to avoid (*see Vanneck v Vanneck*, 49 NY2d 602 [1980].)

As the majority observes, Domestic Relations Law § 76-e (1) explicitly forbids a state from exercising jurisdiction in a custody matter

> "if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this article, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum."

The Italian proceeding respecting custody of the subject child was commenced in April 2004 when, as the majority recognizes, Italy was indisputably the "home state" of the child; and that proceeding evidently continues, the father having filed within it an apparently still-pending appeal challenging the Italian court's award of sole custody to respondent mother. Inasmuch as there is no evidence that the duly commenced Italian custody proceeding has been concluded, or stayed in deference to the New York proceeding, there exists no basis to conclude that an assertion of jurisdiction by this State's Family Court to modify custody would not run afoul of the clear prohibition set forth in Domestic Relations Law § 76-e (1).

Contrary to the majority's "suggestion," a foreign state's exclusive, continuing jurisdiction under the UCCJEA does not depend upon its adherence to appellate procedures similar to those followed in this State.[1] Moreover, even if petitioner father's appeal were properly viewed as a separate proceeding for modification of the Italian custody decree,[2] there would still exist no ground to conclude that at the time the appeal was filed the Italian court did not have jurisdiction in substantial conformity with article 5-A. Having issued the initial custody determination, the Italian court had "exclusive, continuing jurisdiction over the determination" (Domestic Relations Law

---

1. It should be noted, in any case, that the period between the final custody decree of the Civil Court of Rome and petitioner's appeal was not as protracted as the majority would make it appear. While it is true that seven months intervened between the December 2, 2005 custody decree and the father's July 16, 2006 appeal, the decree was modified in March 2006 by the Civil Court of Rome on the application of both parties to correct a "material error."

2. There appears, however, no sound basis to so characterize the appeal, which the record shows was filed not in the Civil Court of Rome, which issued the custody decree, but in the Appeal Court of Rome.

§ 76-a [1]) until it either deferred to the courts of another state on the ground that there was no longer a "significant connection" between the matter and Italy (Domestic Relations Law § 76-a [1] [a]), or there was a judicial determination that neither the child nor the child's parents resided in Italy (Domestic Relations Law § 76-a [1] [b].) Neither of these conditions was met at the time of petitioner's appeal to the Appeal Court of Rome in July 2006, and it is, accordingly, evident that at the time of the appeal the Italian court retained exclusive and continuing jurisdiction over the custody matter, regardless of whether the appeal is characterized as an original proceeding. It follows that the appeal was "commenced in a court of another state having jurisdiction substantially in conformity with [article 5-A]," and that the prohibition upon the exercise of jurisdiction over the matter by the courts of this State contained in Domestic Relations Law § 76-e (1) was thus triggered. There is no basis for the majority's apparent view that a court with exclusive and continuing jurisdiction may be stripped of its jurisdiction in the absence of a judicial finding that the criteria set forth in Domestic Relations Law § 76-a have been met. Indeed, the statute is explicit that exclusive and continuing jurisdiction is retained "until" there has been a judicial determination that the statutorily enumerated conditions for terminating exclusive and continuing jurisdiction have been satisfied. There was no such finding at the time of petitioner's Italian appeal.

While I join the majority in strongly disapproving respondent's flight to Italy with the child in evident anticipation of the dismissal of her family offense petition and in violation of a Family Court order, the proper, prudent and, indeed, statutorily mandated course in this matter, is not to proceed headlong to a hearing in this State's courts on the merits of the cross petition, but to remand the matter with the direction that Family Court communicate with the Italian court to determine whether the custody proceedings in that court are still pending (Domestic Relations Law § 76-e [2]). If they are, and the Italian court declines to determine that the courts of this State are the more appropriate forum for a determination respecting the child's custody, the cross petition must be dismissed (*id.*), and, in that event, there appears no reason why the parties should not be bound by the Italian court's eventual determination of their custody dispute. If, on the other hand, the Italian court defers to the courts of this State, the father's New York Family Court cross petition should proceed. I agree with the majority that at

the time the cross petition was filed, New York was the child's "home state" and that the cross petition should not have been dismissed on forum non conveniens grounds.

FRIEDMAN, SULLIVAN and GONZALEZ, JJ., concur. LIPPMAN, P.J., dissents in part in a separate opinion.

Order, Family Court, New York County, entered on or about June 12, 2007, reversed, on the law, without costs, the cross petition for modification of a custody order issued by a foreign court reinstated and the matter remanded for further proceedings consistent with the decision herein, including a custody inquest.