OPINION OF THE COURT
Helen, J.
The principal issue on this appeal is whether, in this child custody proceeding, New York should exercise home-state jurisdiction. Although the mother in this case had moved the parties’ two children from the Commonwealth of Kentucky to the State of New York six months prior to the commencement of this custody proceeding, she allowed the children to vacation with their father in Kentucky for six weeks during this same period. Under the Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter the UCCJEA) (Domestic Relations Law art 5-A), both a parent and his or her children must reside in a state for at least six consecutive months before the commencement of a child custody proceeding in order for that state to be deemed the “home state” within the meaning of the UCCJEA. We find that New York has home-state jurisdiction pursuant to Family Court Act article 6 and the UCCJEA since the children’s six-week vacation with their father in Kentucky did not constitute a change in their residency.
The petitioner, Carla Ann Felty (hereinafter the mother), seeks review of a determination of the Family Court, Orange County, entered May 29, 2008, granting the motion of the respondent, James R. Felty (hereinafter the father), to dismiss the proceeding for, inter alia, lack of subject matter jurisdiction pursuant to CPLR 3211 (a) (2). The court held that neither Kentucky nor New York was the subject children’s home state, but *66 concluded that Kentucky was the more convenient forum, and consequently transferred the custody proceeding to the Commonwealth of Kentucky, where a trial has been scheduled.
The parties met through the Internet in 2003, when the mother was studying veterinary medicine at Mississippi State University and the father was a teacher studying for a Master of Education degree from the University of Western Kentucky. The parties married on June 5, 2004, in Kentucky. Six months later, the mother became pregnant, but continued her veterinary studies and graduated in May 2005. Upon graduation, the mother moved to New York, where the father joined her soon thereafter.
In September 2005, the mother gave birth, in New York, to twin daughters, Jessica Mae Felty and Jamie Elaine Felty. On October 31, 2005, both parties and the children moved to Kentucky. In August 2006 the parties purchased a house in Kentucky.
In January 2007 the father commenced an action for divorce in Kentucky Family Court. On January 11, 2007, while the Kentucky divorce action was pending, the Kentucky Family Court issued a pendente lite visitation order, which directed equal visitation time between both parties, and directed the parties to participate in mediation. As a consequence of the mediation, the parties reached an agreement regarding the distribution of most of their property, but could not reach a custody agreement.
In April 2007 the mother forwarded a proposed settlement order to the father, which would have held the divorce action in abeyance for one year, allowed the mother to return to New York for at least one year to pursue her career as a veterinarian, and outlined a living arrangement and schedule for residential custody, which provided that the parties and children would, over the next two years, alternate between Kentucky and New York. However, neither the parties nor the Kentucky Family Court signed the proposed settlement order.
On April 20, 2007, the mother and children moved to New York to live with the mother’s parents. Thereafter, the parties sold the house they had purchased together in Kentucky and the father moved in with his parents in Kentucky. On June 7, 2007, both parties signed an “agreed order” to dismiss the Kentucky divorce action without prejudice to reinstatement of the action. From June 9, 2007, through July 14, 2007, the father resided with the mother and the children in the maternal grandparents’ home in New York.
*67 The children visited their father in Kentucky at his parents’ home from July 15, 2007, until August 27, 2007, an approximately six-week period that figures importantly in this custody litigation. While in Kentucky, the children did not have their own bedrooms but, rather, slept on a mattress on the floor of the father’s bedroom, during which time they contracted scabies. However, they were not diagnosed or treated for scabies until they returned to New York.
On November 1, 2007, the mother filed the instant petition for custody in the Family Court, Orange County. In the petition, the mother requested sole custody of the children and that visitation with the father occur only within New York State. In support of this request, the mother asserted, among other things, that she had been the children’s primary caregiver since birth; there were no pediatricians or hospitals in Butler County, Kentucky, where the father resided; the nearest hospital to the father’s residence was 45 minutes away by car; and the home where the father resided was unsanitary. According to the mother’s petition, the father’s residence was infested with mice and did not have a functioning sewer line. Further, the petition alleged that the paternal grandparents’ property, where the father’s trailer was located, was infested with ticks and cockroaches. The mother further alleged that the father was verbally and physically abusive to her on multiple occasions, including, for example, one occasion on which the father threatened to kill her before he would let her take the children to New York. According to the mother, on the same night the father made that threat, he forced her out of their car, requiring her to walk alone on a desolate road for miles before she reached home.
On December 5, 2007, while the mother’s petition for custody was pending in New York, the Kentucky Family Court granted the father’s motion for reinstatement of the previously-dismissed divorce action, but thereafter stayed that action on the mother’s motion.
Meanwhile, before the Family Court, Orange County, the mother asserted, inter alia, that New York was the children’s home state within the meaning of the UCCJEA since the children had lived in this state continuously since April 2007, i.e., for at least six months prior to her commencement of the instant proceeding (see Domestic Relations Law § 75-a [7]).
On February 12, 2008, the father moved to dismiss the petition in the instant proceeding based on, inter alia, lack of *68 subject matter jurisdiction. The father argued, among other things, that the divorce and custody proceedings should both be litigated in Kentucky since the children had not lived in New York for the requisite six consecutive months prior to the mother’s commencement of this proceeding and, thus, New York was not their home state within the meaning of the UCCJEA. Rather, he contended, the mother commenced the proceeding less than four months after the children returned from Kentucky, after residing with him for six weeks during the summer of 2007. He argued that the children’s six-week absence from New York was not temporary and, thus, the children had not lived in New York for the requisite six consecutive months prior to the commencement of this proceeding.
In opposition, the mother submitted an affidavit in which she averred that the father had been physically and verbally abusive toward her while she was pregnant. She explained that, after giving birth to the twins in New York, she agreed to move to Kentucky, with the understanding that she could return to New York at any time. The mother averred that, upon the father’s commencement of the divorce action in Kentucky, she agreed to reconcile the marriage only in a desperate attempt to return to New York. The mother contended that she and the children moved to New York with the knowledge of both the Kentucky Family Court and the father, and that she filed the instant custody petition only after she and the children had lived in New York for six consecutive months.
The mother also asserted that her residence in Kentucky had always been temporary, as evidenced by the fact that her driver’s license, voter registration, and veterinary license remained in New York. She asserted that, even while she was physically in Kentucky, she continued to use her parents’ address in New York as her permanent address. Moreover, she noted that the children’s six-week visit to Kentucky was not undertaken pursuant to any stipulated living arrangement, but only as an ad hoc arrangement between the parties.
The mother further contended that returning the children to Kentucky would place them in imminent and substantial danger. On this issue, the mother noted that, since reinstatement of the divorce action in Kentucky, doctors in New York had diagnosed *69 Jamie with microcephaly.[1] Because of Jamie’s need for medical attention and the Kentucky doctor’s failure initially to diagnose that condition, the mother averred that she did not trust the health care system in Kentucky and expressed fear that it could compromise Jamie’s health.[2] In addition to Jamie’s medical condition, Jessica has also been directed to meet with an occupational therapist to improve her delayed fine motor skills.
The Family Court granted the father’s motion and dismissed the proceeding for lack of subject matter jurisdiction. The court held that neither New York nor Kentucky was the children’s home state since their six-week stay with the father in Kentucky was not a temporary absence from New York, but constituted a change of residence. Similarly, the court held that the mother’s relocation with the children from Kentucky to New York in April 2007 was not a temporary absence from Kentucky; hence, it determined that Kentucky was not the home state either. The Family Court then determined that Kentucky was the more convenient forum for the custody proceeding since the children resided most of their lives in Kentucky. We reverse.
New York’s adoption of the UCCJEA was intended to accomplish three principal goals. First, it was designed “to obtain and enforce orders of custody and visitation across state lines and to do so in a manner that ensures that the safety of the children is paramount and that victims of domestic violence and child abuse are protected” (Domestic Relations Law § 75 [2]; see Assembly Mem in Support of L 2001, ch 386, 2001 McKinney’s Session Laws of NY, at 1558). Second, it was designed to eliminate any jurisdictional competition between courts and strengthen jurisdictional certainty in child custody proceedings (see Matter of Michael McC. v Manuela A., 48 AD3d 91, 95 [2007]; Stocker v Sheehan, 13 AD3d 1, 4 [2004]; EB v EFB, 7 Misc 3d 423, 432 [2005], affd sub nom. Bjornson v Bjornson, 20 AD3d 497 [2005]). Third, it was designed to resolve any inconsistencies and conflict between its predecessor, the Uniform Child Custody Jurisdiction Act (hereinafter the UCCJA) and with the Federal Parental Kidnaping Prevention Act (hereinafter the PKPA) (28 USC § 1738A; see Handschu, *70 Outside Counsel, Uniform Child Custody Jurisdiction and Enforcement Act, NYLJ, Oct. 4, 1999, at 1, col 1; Ilvento, The Application of Kinney System, Inc. v. Continental Ins. Co. to Modification of Child Custody Proceedings, 83 Fla BJ 41 [May-2009]). In addition to resolving the conflicts between the UCCJA and the PKPA, the UCCJEA also conforms to the Violence Against Women Act (hereinafter the VAWA) (18 USC § 2265 et seq.) and the VAWA’s goal of protecting victims of domestic violence who flee from one state to another state with their children to escape abuse (see Domestic Relations Law § 76-g [4]; Handschu, Uniform Child Custody Jurisdiction and Enforcement Act, NYLJ, Oct. 4, 1999, at 1, col 2).
Under the Domestic Relations Law, a state may have jurisdiction over a child custody proceeding if the “state is the home state of the child” (Domestic Relations Law § 76 [1] [a]; see Matter of Ciccone v Pugh, 42 AD3d 767 [2007]). A “[h]ome [s]tate” is defined as “the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding” (Domestic Relations Law § 75-a [7]). The definition of home state also permits a period of temporary absence during the six-month time frame necessary to establish home-state residency (see id.; Arnold v Harari, 4 AD3d 644 [2004]).
Here, the facts support the mother’s contention that she intended to remain permanently in New York and that the children’s six-week visit to Kentucky during the summer of 2007 was a temporary absence which did not interrupt the six-month pre-petition residency period required by the UCCJEA. Although the mother may have expressed to the father that she would return to Kentucky, her actions indicated otherwise. For instance, the mother never changed her permanent address from New York to Kentucky, and her driver’s license, veterinary license, and voter registration all remained in New York. Furthermore, in New York, the children received special education services, had a pediatrician, and resided in their own home with the mother, who was the children’s primary caregiver since birth. Considering these facts, it is evident that the mother intended New York to be the permanent residence and home state for both herself and the children. Her conduct could not be construed to evince an intent to have the children stay permanently in Kentucky.
We are further persuaded that Kentucky is not the children’s home state by virtue of the fact that the father took no affirma *71 tive steps prior to the commencement of this proceeding to establish any permanent residence for the children in Kentucky. Considering the children’s health and developmental concerns, health care was and is highly important to the children’s well-being. Despite these health issues, the father did not retain a pediatrician or a therapist when the children resided in Kentucky. Moreover, the children did not have bedrooms but, rather, slept on the floor of the father’s room in the grandparents’ home. In sum, the mother’s decision to seek medical and psychological care for the children in New York demonstrated a level of permanency that was never achieved in Kentucky, and is indicative of a home-state residency for the children.
If a parent wrongfully removes a child from a state, the time following the removal is considered a temporary absence (see Matter of Michael McC. v Manuela A., 48 AD3d at 96; Matter of Krymko v Krymko, 32 AD3d 941 [2006]; Arnold v Harari, 4 AD3d 644 [2004]). The father argues that the mother left Kentucky under false pretenses, and that Kentucky thus retained home-state jurisdiction through the wrongful removal exception. Citing Matter of Krymko v Krymko (32 AD3d 941 [2006]), the father contends that the mother wrongfully removed the children from Kentucky and participated in forum shopping and gamesmanship, thus violating the intent and purpose of the UCCJEA. The record, however, does not support these contentions. Although the parties and children previously resided as a family unit in Kentucky, and the children lived most of their lives in Kentucky, the father failed to show how the children’s move to New York constituted a temporary absence from Kentucky or was effected through a wrongful removal.
In any event, a wrongful removal will not be treated as a temporary absence “if there is evidence that the taking or retention of the child was to protect the petitioner from domestic violence” (Domestic Relations Law § 76-g [4]; see Hector G. v Josefina P., 2 Misc 3d 801, 820-821 [2003]; Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 76-g, 2009 Pocket Part, at 211). Other states have also applied the UCCJEA to protect victims of domestic violence who flee from one state to another with their children to escape abuse and seek custody in a different jurisdiction (see e.g. Bissell v Baumgardner, 236 SW3d 24 [Ky Ct App 2007]; Stoneman v Drollinger, 314 Mont 139, 64 P3d 997 [2003]; In re Parentage, Parenting, & Support of A.R.K.-K, 142 Wash App 297, 307, 174 P3d 160, 165 [2007]). Although one goal of the *72 UCCJEA is to prevent forum shopping (see Matter of Michael McC. v Manuela A., 48 AD3d at 95; EB v EFB, 7 Misc 3d at 429), another crucial purpose of the UCCJEA is to protect victims of domestic violence who, on their face, may be perceived as forum shoppers, but in reality are fleeing from one state to another to escape abuse (see Assembly Mem in Support of L 2001, ch 386, 2001 McKinney’s Session Laws of NY, at 1558; Hector G. v Josefina P., 2 Misc 3d at 820-821). Here, the mother admittedly misled the father about agreeing to reconcile their marriage. However, the mother averred that the father would not permit her to return to New York if she refused to attempt reconciliation. She thus asserts that although she lied to the father, she did so with the intent to return to New York to protect herself and the children from the threat of domestic violence (see generally Matter of Machado v Del Villar, 299 AD2d 361, 361 [2002]). Pursuant to Domestic Relations Law § 76-g (4), a party’s conduct may not be construed against him or her if he or she engaged in such conduct to protect against domestic violence (see Hector G. v Josefina P., 2 Misc 3d at 821-822; Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 76-g, 2009 Pocket Part, at 211). Accordingly, we do not construe the mother’s conduct as a wrongful removal, since her concededly false statement of intent was made to escape an allegedly abusive relationship which included threats of domestic violence.
In sum, the record reveals that the children’s six-week summer visit to Kentucky was merely a temporary stay similar to a summer vacation. The mother agreed to the six-week visit so that the children could have the opportunity to spend time with their family in Kentucky, with the understanding that the children would return to New York to resume their therapy and schooling. As a result, the children’s visit to Kentucky was not a change of residency, but was merely a temporary absence from New York. As such, under Domestic Relations Law § 75-a (7), the children’s temporary absence from New York is considered to be part of the requisite six-month period. New York is thus the children’s home state and its courts have jurisdiction to hear the instant custody proceeding.
In addition to furthering the UCCJEA’s goals of protecting a party who has made allegations of domestic abuse and attending to the health and educational needs of the subject children, New York’s exercise of jurisdiction here furthers the statutory goal of strengthening jurisdictional certainty in child custody *73 proceedings. In the interest of protecting children and parents who travel frequently between states, our recognition of the children’s six-week visit as a temporary absence permits parties to child custody proceedings to freely vacation and visit family members in other states without fear of losing home-state status. Thus, the Family Court’s determination that neither New York nor Kentucky was the children’s home state is incorrect.
Since New York is the children’s home state within the meaning of the UCCJEA, the courts of New York have jurisdiction over this custody proceeding unless jurisdiction is declined (see Domestic Relations Law § 76-f [1]; Matter of Navarrete v Wyatt, 52 AD3d 836 [2008]; Matter of Michael McC. v Manuela A., 48 AD3d at 97). We find no ground to decline such jurisdiction and, thus, we need not analyze whether New York or Kentucky is the more convenient forum.
The order is reversed insofar as appealed from, on the law, on the facts, and in the exercise of discretion, the motion to dismiss the petition for lack of subject matter jurisdiction is denied, the petition is reinstated, and the matter is remitted to the Family Court, Orange County, for further proceedings on the petition.
Mastro, J.P., Dickerson and Chambers, JJ., concur.
Ordered that the order is reversed insofar as appealed from, on the law, on the facts, and in the exercise of discretion, with costs, the motion to dismiss the petition for lack of subject matter jurisdiction is denied, the petition is reinstated, and the matter is remitted to the Family Court, Orange County, for further proceedings on the petition.

. Microcephaly is “associated with mental retardation” and is characterized by an “abnormal smallness of the head” (Physicians’ Desk Reference Medical Dictionary 1112 [2d ed 2000]).

. According to the mother and the attorney for the children, in September 2008, both of the subject children began receiving special education services, including speech, occupational, and physical therapy in New York, and are attending preschool in New York.