IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

PHILLIP G., *Petitioner*,

*v.*

THE HONORABLE RONEE KORBIN-STEINER, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge*,

ARIZONA DEPARTMENT OF CHILD SAFETY, *Real Party in Interest*.

No. 1 CA-SA 23-0187
FILED 12-21-2023

_____

Petition for Special Action from the Superior Court in Maricopa County
No. JD510761
The Honorable Elizabeth Bingert, Commissioner
The Honorable Jay M. Polk, Judge
The Honorable Ronee Korbin-Steiner, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

_____

COUNSEL

Maricopa County Public Advocate, Mesa
By Christine Jones
*Counsel for Petitioner*

Arizona Attorney General's Office, Tucson
By Dawn Rachelle Williams
*Counsel for Real Party in Interest DCS*

Alexander Legal LLC, Chandler
By Amy Alexander
*Counsel for Real Party in Interest T.G.*

Law Office of Timothy V. Nelson, Queen Creek
By Timothy V. Nelson
*Counsel for Real Party Anita M.*

———————————————

**OPINION**

Judge Michael S. Catlett delivered the opinion of the Court, in which Presiding Judge David D. Weinzweig and Judge Maria Elena Cruz joined.

———————————————

**C A T L E T T**, Judge:

¶1        T.G. ("Child") was born in Ohio in August 2023.  When Child was just two days old, the juvenile court issued *ex parte* orders allowing the Department of Child Safety (the "Department") to take Child into custody and bring her to Arizona.  The Department, therefore, took Child into custody in Ohio and transported her to Arizona.  By then, Child was just *five days old*.

¶2        The question presented is whether the juvenile court had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to allow the Department to take custody of an infant born and located in Ohio who had never been to Arizona.  The answer is no.

¶3        Phillip G., Child's father ("Father"), sought special action relief from this Court, arguing the juvenile court lacked jurisdiction over Child.  Though the Department sought the *ex parte* orders at issue and then defended them in the juvenile court, the Department changed course when Father sought special action relief, conceding the juvenile court lacked jurisdiction.  We agreed the juvenile court lacked jurisdiction.  So we issued an order accepting special action jurisdiction and granting relief by vacating the juvenile court's orders and requiring the Department to return Child to Ohio.  We also promised an opinion would follow.  This is that opinion.

## FACTS AND PROCEDURAL HISTORY

¶4        Anita M. ("Mother") and Father are Child's parents.  According to the Department, "[b]oth parents have a well-documented history of substance abuse, mental-health issues, and child neglect,

resulting in the termination of Mother's parental rights to seven children and the termination of Father's parental rights to four children."

¶5            Around July 2023, Father moved from Arizona to Ohio.  On August 11, 2023, Mother flew from Arizona to Ohio, where she gave birth to Child on August 12, 2023.  The Department received a call from the Ohio Department of Job and Family Services (the "Ohio Department") reporting Child was "substance exposed" at birth and Mother had tested positive for amphetamines.  The Ohio Department declined to take jurisdiction over Child but said it would take temporary emergency jurisdiction until the Department could take custody.  The record does not reflect whether the Ohio Department did so.

¶6            At 12:15 p.m. on August 14, 2023, the Department filed an *ex parte* motion in the juvenile court to take custody of Child.  Two minutes later, the juvenile court issued the requested order — at 12:17 p.m., the court signed an *ex parte* order permitting the Department to take Child into custody.  That same day, the Department also filed a dependency petition and asked for temporary orders.  The Department acknowledged that Father had moved to Ohio and Child was born there but asked the juvenile court to exercise temporary jurisdiction and place Child in the Department's custody.

¶7            The next day, the juvenile court issued temporary orders, setting a preliminary hearing, making Child a temporary ward of the court, placing Child in the Department's physical and legal custody, and authorizing law enforcement to assist in removing Child from Ohio to Arizona.  The court issued the temporary orders when Child was still in Ohio; those orders did not address jurisdiction.

¶8            On August 17, 2023, when Child was five days old, the Department arranged for her to be taken into custody and transported from Ohio to Arizona.  After a hearing, the juvenile court concluded there was "probable cause to find that temporary emergency jurisdiction in Arizona is appropriate given the alleged substance abuse issues[.]" The court acknowledged that "[Child] was not originally present in Arizona," but it exercised temporary emergency jurisdiction because "she is residing here now as a result of the Department obtaining an order to remove her from Ohio."  The court believed the Department "had no other option but to bring [Child] to Arizona."

¶9            The juvenile court also held discussions with two Ohio judges — one in Stark County and one in Carroll County — about whether

their courts would accept jurisdiction over Child. It is unclear whether any of the parties were present for those conversations, but the juvenile court later indicated that the Ohio judges said they would not accept jurisdiction.

**¶10** Father moved to dismiss the dependency petition on grounds that the juvenile court lacked jurisdiction under the UCCJEA. The juvenile court refused. The court admitted that the Department "took custody of [Child] under less-than-ideal facts" and that Child "was not physically present [in Arizona] at the time the initial order was issued." But the court found it had jurisdiction and denied Father's motion to dismiss "because Ohio has declined to exercise jurisdiction on the ground that Arizona is the more appropriate forum."

**¶11** Father petitioned for special action relief. In its response to Father's petition, the Department conceded that "[t]he juvenile court . . . lacked jurisdiction to enter the orders regarding [Child's] custody, and those orders are void." The Department explained that Child "was not present in Arizona until on or about August 17, after the court had entered the August 14 and 15 orders regarding her custody. In fact, [Child] is now present in Arizona due only to those orders."

**¶12** We agreed the juvenile court lacked jurisdiction. We issued an order accepting special action jurisdiction, vacating the superior court's orders, requiring the Department return Child to Ohio, and indicating an opinion would later issue.

## JURISDICTION

**¶13** Arizona Rule for Special Action Procedure 3 lists those questions appropriate for special action review. When a party raises one of those questions, special action review is still unavailable "where there is an equally plain, speedy, and adequate remedy by appeal[.]" Ariz. R.P. Spec. Act. 1(a). Even if a party raises a proper question, and does not have an equally plain, speedy, and adequate appellate remedy, whether to accept jurisdiction remains "highly discretionary." *See King v. Super. Ct.*, 138 Ariz. 147, 149 (1983); State Bar Comm. Notes, Ariz. R.P. Spec. Act. 3.

**¶14** Special action jurisdiction is appropriate here. Father argues the juvenile court could not exercise jurisdiction over Child, an issue appropriate for special action review. *See* Ariz. R. P. Spec. Act. 3(b) ("Whether the defendant has proceeded . . . without or in excess of jurisdiction or legal authority[.]"). Whether the juvenile court had jurisdiction is a pure issue of law. Moreover, temporary emergency orders are not final or appealable, and this Court has concluded that special action

review is justified to determine whether the juvenile court has temporary emergency jurisdiction to issue such orders. *Madison C. v. Marwil*, 255 Ariz. 244, ___ ¶ 17 (App. 2023) ("Whether a superior court errs by exercising temporary emergency jurisdiction over a child is . . . likely to evade appellate review."). The petition also presents a question of statewide concern—does the UCCJEA give the juvenile court jurisdiction after an infant is transported from the child's home state to Arizona based on a void custody order? So we exercise our discretion to accept jurisdiction.

## DISCUSSION

**¶15**        The Department serves an important public function: protecting Arizona's children. A.R.S. § 8-451(B). Toward that end, the legislature has tasked the Department with, among other responsibilities, responding to reports of child abuse or neglect and ensuring children remain in a "safe and stable" environment while "strengthen[ing] the family." *Id.* But like all state agencies, the Department is not vested with unlimited power to attain the ends with which it is tasked—there are limits.

**¶16**        The same goes for the juvenile court, which may exercise jurisdiction only when constitutional or statutory text grants it. Ariz. Const. art. VI, § 15; *In re Stephanie N.*, 210 Ariz. 317, 319 ¶ 11 (App. 2005) (the juvenile court may exercise jurisdiction only "within the terms of the applicable statutes"). Thus, the jurisdictional issue presented "requires us to determine the meaning of the words the legislature chose to use." *S. Ariz. Home Builders Ass'n v. Town of Marana*, ___ Ariz. ___, 522 P.3d 671, 676 ¶ 31 (2023). "We do so . . . according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise." *Id.*

**¶17**        We review *de novo* whether the juvenile court had subject matter jurisdiction under the UCCJEA. *Gutierrez v. Fox*, 242 Ariz. 259, 264 ¶ 17 (App. 2017). If the juvenile court acted without jurisdiction, any resulting orders are void. *Denia L. v. Dep't of Child Safety*, 248 Ariz. 36, 39 ¶ 11 (App. 2019).

## I.

**¶18**        The juvenile court's jurisdiction is generally (although not entirely) laid out in Title 8 of the Arizona Revised Statutes. We start with a provision in Title 8 aptly named, "Jurisdiction of juvenile court." It broadly grants (with one exception irrelevant here) the juvenile court "exclusive original jurisdiction over all proceedings brought under the authority of"

Title 8. *See* A.R.S. § 8-202(B). That provision, therefore, requires us to travel elsewhere in Title 8 to determine if the juvenile court had "authority" here.

¶19          Title 8 gives the juvenile court authority, in response to a dependency petition, to authorize the Department "to take temporary custody of a child" if the court finds probable cause to believe such custody is needed "to protect the child from suffering abuse or neglect and it is contrary to the child's welfare to remain in the home." A.R.S. § 8-821(B). If the court authorizes the Department to take temporary custody, the court must quickly hold a hearing to decide whether custody is "clearly necessary to prevent abuse or neglect" during the ensuing dependency proceedings. A.R.S. §§ 8-824(A), 8-825(C). The juvenile court, here, operated within the bounds of these provisions—it authorized temporary custody and quickly held a hearing. But there should have been more to the court's jurisdictional inquiry before allowing the Department to take custody of Child and move her out of Ohio, or to keep her here after that occurred.

## II.

¶20          When child custody is involved, particularly involving a child in another state, there are additional jurisdictional constraints the juvenile court must consider. The court's jurisdictional analysis must extend to Title 25, which contains the UCCJEA. *See Tracy D. v. Dep't of Child Safety*, 252 Ariz. 425, 429 ¶ 11 (App. 2021). The UCCJEA determines when a superior court has jurisdiction to make an initial custody determination, including in a dependency action. *See* A.R.S. § 25-1002(4)(a) (defining "child custody proceeding" to include "a proceeding for . . . dependency"). Since 2000, Arizona has been a signatory to the UCCJEA, which has been adopted in 49 states (Massachusetts being the lone exception). *See Sha'quia v. Dep't of Child Safety*, 251 Ariz. 212, 214 ¶ 9 (App. 2021). The UCCJEA is "designed to prevent competing and conflicting custody orders by courts in different jurisdictions" that could result in "unilateral removals of children from or to various jurisdictions." *Angel B. v. Vanessa J.*, 234 Ariz. 69, 72 ¶ 8 (App. 2014). The Arizona legislature codified the UCCJEA in Title 25, making it effective as of January 1, 2001. *See* A.R.S. §§ 25-1001 to -1067. After its adoption in Arizona, the UCCJEA became "the requisite jurisdictional basis for making an initial custody determination." *Madison C.*, 255 Ariz. at ___ ¶ 19.

¶21          Under the UCCJEA, much of the jurisdictional analysis turns on the child's "home state." *See* A.R.S. § 25-1031(A)(1). Arizona courts have jurisdiction to make an initial custody determination when Arizona is "the home state of the child" when the proceeding at issue begins. *Id.*; A.R.S. §

25-1002(5); *see also David S. v. Audilio S.*, 201 Ariz. 134, 136 ¶ 6 (App. 2001) (explaining that jurisdiction is determined at "the commencement of the proceedings"). When a child is less than six months old, the child's "home state" is "the state in which the child lived from birth with a parent or person acting as a parent." A.R.S. § 25-1002(7)(b).

¶22 There are two other times when the UCCJEA allows the juvenile court to make an initial custody determination. First, Arizona courts have jurisdiction when the child has no home state or the court in the child's home state declines jurisdiction because Arizona is the most appropriate forum and two other requirements are met—a significant connection and substantial evidence requirement. A.R.S. § 25-1031(A)(2). Second, Arizona courts can make an initial custody determination when all courts have declined jurisdiction because Arizona is the more appropriate forum. A.R.S. § 25-1031(A)(3).

¶23 Even without jurisdiction to make an initial custody determination, the UCCJEA permits the juvenile court to issue temporary emergency orders (what the UCCJEA calls "temporary emergency jurisdiction") when a child has been abandoned or to protect a child from actual or threatened mistreatment. A.R.S. § 25-1034(A); *see also Madison C.*, 255 Ariz. at ___ ¶ 23 (concluding that, where the child's home state was Arkansas, "the superior court had to apply Section 25-1034(A)"). But for the juvenile court to issue temporary orders, the child must be "present in this state." A.R.S. § 25-1034(A).

## III.

¶24 Turning to the circumstances in this case, the juvenile court lacked jurisdiction under the UCCJEA to make an initial custody determination. The Department commenced these proceedings with its first *ex parte* custody motion on August 14, 2023, which became the pertinent date for jurisdiction. On that date, Child lived in Ohio and had done so since birth, making Ohio her home state, not Arizona. *See* A.R.S. § 25-1002(7)(b). The Department repeatedly admitted as much in its filings in the juvenile court. For example, the Department's response to Father's motion to dismiss said, "The Department acknowledges that Arizona was not [Child's] home state on the date of the commencement of the proceeding." That acknowledgement should have ended the juvenile court's initial custody inquiry.

¶25            But the superior court thought it could make an initial custody determination because judges in Ohio declined to accept jurisdiction.  That was wrong for two reasons.

¶26            First, the timing was off.  Jurisdiction must exist when proceedings start.  *See David S.*, 201 Ariz. at 136 ¶ 6.  In this context, then, the juvenile court could only determine initial custody if the Ohio courts had declined jurisdiction *prior to* the commencement of dependency proceedings in Arizona.  That did not happen—the juvenile court conferred with the Ohio judges *after* giving the Department initial custody.  No court in Ohio (or anywhere else) declined jurisdiction *prior to* the Arizona proceedings beginning on August 14, 2023.

¶27            Second, important procedures were lacking.  Both non-home-state grounds for initial custody jurisdiction require a foreign court to decline jurisdiction under A.R.S. §§ 25-1037 or -1038.  We focus on § 25-1037 because § 25-1038 involves unjustifiable conduct and is not implicated here.  Section 25-1037 allows a court to decline jurisdiction if it decides the state where it is located is an inconvenient forum and "a court of another state is a more appropriate forum."  A.R.S. § 25-1037(A).  The statute lists non-exhaustive factors the court "shall consider" when deciding the appropriate forum.  A.R.S. § 25-1037(B).  And the statute says the court "shall allow the parties to submit information" to aid in the court's analysis.  *Id.*  Ohio, as a signatory to the UCCJEA, requires the same procedures.  *See* Ohio Rev. Code Ann. § 3127.21.

¶28            The juvenile court's discussions with the Ohio judges were insufficient to trigger jurisdiction because the resulting decisions denying jurisdiction did not follow the UCCJEA's procedural requirements for doing so.  There is no indication the Ohio judges had formal proceedings pending regarding Child or determined within any such proceedings that Ohio was an inconvenient forum using the factors listed in the UCCJEA. *See* A.R.S. § 25-1037(B); Ohio Rev. Code Ann. § 3127.21(B).  The Ohio judges also did not allow Father or the Department to "submit information" to aid in their analyses. *See id.*  This is not to suggest Arizona courts should nitpick procedures used by other state courts.  But when procedures the UCCJEA requires are completely missing, another state court's decision to decline jurisdiction is insufficient to trigger initial custody jurisdiction when Arizona is not a child's home state.

¶29            The juvenile court also lacked temporary emergency jurisdiction.  Recall that such jurisdiction under the UCCJEA requires a child to be "present in this State."  *See* A.R.S. § 25-1034(A).  Child was not

present in Arizona on August 14, when the juvenile court issued its first custody order. Nor was Child present on August 15, when the juvenile court placed Child in the Department's custody. Child was not present in Arizona until August 17, and only then because the Department brought her here.

¶30 The juvenile court still based jurisdiction on Child's presence in Arizona, concluding it had jurisdiction because Child "is residing here now as a result of the Department obtaining an order to remove her from Ohio." Yet, as the Department concedes and we conclude, the court entered its initial custody orders without jurisdiction—the orders were void. Using a child's involuntary presence due to void orders to self-generate jurisdiction is inconsistent, not only with the text and purpose of the UCCJEA, but with foundational principles of liberty and due process. No child should be forcibly moved across the country in the absence of jurisdiction, and no state agency or court order should use the child's resulting presence to later justify jurisdiction. *See Burnham v. Super. Ct.*, 495 U.S. 604, 613 (1990) (observing that, at the time of the Fourteenth Amendment's adoption, "[m]ost States . . . had statutes or common-law rules that exempted from service of process individuals who were brought into the forum by force or fraud"). The juvenile court erred by concluding otherwise.

## CONCLUSION

¶31 The juvenile court issued orders resulting in the Department taking a five-day-old child into custody and transporting her from Ohio to Arizona when the child had never been to Arizona. The court lacked jurisdiction to do so. We accept special action jurisdiction and grant relief by vacating the juvenile court's orders and requiring the Department to return Child to Ohio.



AMY M. WOOD • Clerk of the Court
FILED: AA

9